**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **No. 21-CR-78-EGS** |
| | **:** | |
| **JOHN EARLE SULLIVAN** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**<u>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT</u>**
**<u>EIGHT OF THE SUPERSEDING INDICTMENT</u>**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's "Motion to Dismiss Count Eight of the Superseding Indictment." Count Eight charges the defendant, John Earle Sullivan, with making "materially false" statements and representations in a January 11, 2021, FBI interview that "he did not have a weapon, including a knife, while inside the United States Capitol Building on January 6, 2021 in the District of Columbia" when the defendant knew "then and there" that "he did have a knife on his person while inside the United States Capitol Building on January 6, 2021, in the District of Columbia." ECF 26, at 4-5. Specifically, the defendant made statements acknowledging that while he knew he could be heard on video stating that he had a knife while inside the Capitol Building, he did not in fact have a knife; Sullivan alternately claimed that he was just responding to something the person next to him had said, that he was joking, and that he was trying to fit in with the crowd when he so stated.

The defendant styles his challenge as a constitutional void-for-vagueness challenge to the term "materiality" in the false statements statute, 18 U.S.C. § 1001, and argues that his statements had "absolutely no bearing on the investigation or the involvement of John Sullivan in the

1

invasion" of "the United States Capitol on January 6, 2021." ECF 47, at 5. The term "materiality," however, is not unconstitutionally vague. No court has so held, and the defendant has failed to cite any authority for that proposition; the weight of the caselaw is to the contrary. And to the extent the defendant advances the argument that his statements were immaterial to the FBI, a grand jury of the District of Columbia found otherwise and that fact-intensive issue is now a matter for adjudication at trial – not, as presented, through a Rule 12(b)(3) motion. The defendant's motion is without merit and should be denied.

## FACTUAL BACKGROUND

As recounted at greater length in the charging documents and previous pleadings, the defendant, John Earle Sullivan, posted a video on social media that recorded his participation in the breach of the U.S. Capitol Building on January 6, 2021. The video captured the defendant saying at various points: "There are so many people. Let's go. This shit is ours! Fuck yeah," "We accomplished this shit. We did this together. Fuck yeah! We are all a part of this history," and "Let's burn this shit down." It showed the defendant extending his hand to help pull up an individual climbing a wall to reach a plaza just outside the Capitol Building entrance, saying "You guys are fucking savage. Let's go!" The video showed the defendant's ballistics gear and gas mask, and captured the defendant climbing through a broken window to enter the Capitol Building. The video further recorded several encounters between the defendant and law enforcement officers, including ones where the defendant told the officers that "you are putting yourself in harm's way," "the people have spoken," and "there are too many people, you gotta stand down, the people out there that tried to do that shit, they got hurt, I saw it, I'm caring about you." At a later point, after someone lunges their body against a door, the defendant can be heard saying, "That's what I'm sayin', break that shit."

As relevant here, the video showed the defendant joining a crowd gathered before the main entrance to the House Chamber in the U.S. Capitol.  There, the defendant could be heard telling other individuals, "there's officers at the door," and then could be heard – but not seen – saying, "Hey guys, I have a knife. I have a knife.  Let me up."  Later in the video, the defendant then approaches the doorway to the Speaker's Lobby, a hallway which connects to the House Chamber. There too, the defendant can be heard – but again not seen – saying, "I have a knife…. Let me through I got a knife, I got a knife, I got a knife."

On January 11, 2021, an FBI agent interviewed the defendant at the defendant's home.  In the course of the interview, the agent asked the defendant whether he had a weapon on January 6, 2021, while inside the Capitol Building:

> AF: Did you have a wea—a gun on you or anything?
>
> JS: No, I had no gun. No guns, no weapons
>
> AF: No knife or anything like that?
>
> JS: It is illegal to carry that—all of that stuff.
>
> AF: Oh, for sure. I just want—I mean, if I'm not a pro-Trumper, and, you know, I'm going into— the lion's den, I would wanna, you know, at least feel secure, so.
>
> JS: Yeah. I mean, I flew in so, like, I can't bring a gun on the plane— or anything like that, so yeah.
>
> …
>
> AF: Okay. Um, I just ask the weapons question cause I think you sent a link to one of our agents—um, of a fifty-minute clip when you guys go in. I think in there—I wanna say, uh—
>
> JS: I know what you're talking about.
>
> AF: —it was probably your voice—about having a knife.
>
> JS: Yeah, I do know what you're talking about. So, I'm talking to the person next to me, like, words you can't hear because, like, all the camera can hear is my voice. You really can't hear anybody outside or around me. So, he's talking to me about something like that. But, I do remember that part of, like, me saying like, "Oh, yeah, I have a knife on me." I think it was more in a joking manner, like, not literally have a knife on me. Like, at no point do I plan to, like, stab somebody. Um, so like I just don't have a knife on me on that—in that instance.
>
> AF: Okay.

JS: But it was more like—I mean I said a lot of things throughout that entire video.

AF: Yeah.

JS: But it was only, like, to relate to the person next to me, so that they don't feel the need to, like, just start fucking me up.

On January 13, 2021, the defendant was charged by complaint with violations of 18 U.S.C. §§ 231(a)(3) & 2 (Civil Disorders); 18 U.S.C. § 1752(a) (Knowingly Entering or Remaining in a Restricted Building or Grounds without Lawful Authority); and 40 U.S.C. § 5104(e)(2) (Violent Entry and Disorderly Conduct on Capitol Grounds), and the defendant was arrested the following day.  The defendant was not charged with any weapons count.

On February 3, 2021, a grand jury in the District of Columbia returned an indictment against the defendant charging violations of 18 U.S.C. §§ 1512(c)(2) & 2 (Obstruction of an Official Proceeding and Aiding and Abetting); 18 U.S.C. §§ 231(a)(3) & 2 (Civil Disorders and Aiding and Abetting); 18 U.S.C. §§ 1752(a)(1) (Entering or Remaining in a Restricted Building or Grounds) and 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds); and 40 U.S.C. §§ 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building) and 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building).  Again, the defendant was not indicted on any weapons count.

Subsequent to that date, law enforcement obtained and reviewed other video from the scene when Sullivan stood before the main entrance to the House Chamber and was heard saying, "Hey guys, I have a knife. I have a knife.  Let me up."  The video appeared to show the defendant holding up the black handle to a knife at the very moment that he made the statement about having a knife.

On May 19, 2021, based on that video as well as additional evidence gathered in the course of the investigation, a grand jury returned a Superseding Indictment that added, *inter alia*, weapons charges and a false statements charge against the defendant.  The Superseding Indictment charges violations of 18 U.S.C. §§ 1512(c)(2) & 2 (Obstruction of an Official Proceeding and Aiding and

4

Abetting); 18 U.S.C. §§ 231(a)(3) & 2 (Civil Disorders and Aiding and Abetting); 18 U.S.C. §§ 1752(a)(1) and 1752(b)(1)(A) (Entering or Remaining in a Restricted Building or Grounds with a Dangerous Weapon); 18 U.S.C. §§ 1752(a)(2) and 1752(b)(1)(A) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Dangerous Weapon); 40 U.S.C. § 5104(e)(1)(A)(i) (Unlawful Possession of a Dangerous Weapon on Capitol Grounds or Buildings); 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building); 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building); and 18 U.S.C. § 1001(a)(2) (False Statement or Representation to an Agency of the United States).

Count Eight, the false statements charge, alleges as follows:

On or about January 11, 2021, in the District of Columbia and elsewhere, JOHN EARLE SULLIVAN, did willfully and knowingly make materially false, fictitious, and fraudulent statements and representations in a criminal matter in the District of Columbia within the jurisdiction of the executive branch of the Government of the United States, by stating to a Special Agent of the Federal Bureau of Investigation that he did not have a weapon, including a knife, while inside the United States Capitol Building on January 6, 2021 in the District of Columbia.  The statements and representations were false because, as JOHN EARLE SULLIVAN then and there knew, he did have a knife on his person while inside the United States Capitol Building on January 6, 2021 in the District of Columbia.

ECF 26, at 4-5.

## **ARGUMENT**

### I.     **Section 1001 is Not Unconstitutionally Vague.**

Section 1001 of Title 18 of the United States Code punishes "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully… makes any materially false, fictitious, or fraudulent statement or representation."  18 U.S.C. § 1001(a)(2).  The defendant's motion to suppress contends that the statute does not "pass constitutional scrutiny" because it "does not adequately define 'materiality' in general and specifically does [not] provide any guidance whether a statement that is outside the

scope of the alleged crime that is being investigated comes within the intended purpose of the statute." ECF 47, at 6-7.   The defendant contends that Count Eight should therefore be dismissed. But the statutory language is not so indefinite as to be unconstitutionally void for vagueness, and the defendant cites no caselaw that supports that proposition.

A criminal statute is void for vagueness only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008); *accord United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017).   "This is a stringent standard."   *United States v. Harmon*, 2021 WL 1518344, at *4 (D.D.C. April 16, 2021).   A void-for-vagueness challenge is unavailing when posed to a statute that merely "'requires a person to conform his conduct to an imprecise but comprehensible normative standard,' whose satisfaction may vary depending upon whom you ask"; instead, unconstitutional vagueness arises only if the statute "specifies no standard of conduct at all."   *Bronstein*, 849 F.3d at 1107; *see also United States v. Thomas*, 864 F.2d 188, 195 (D.C. Cir. 1988) ("we cannot forget that language is unavoidably inexact, and that statutes cannot, in reason, define proscribed behavior exhaustively or with consummate precision").   Particularly where "the defendants' actions clearly fall within the intended reach of the … statute," "their complaints of vagueness are unavailing" and will fail. *United States v. McGarity*, 669 F.3d 1218, 1234 (11th Cir. 2012); *see also Hoffman Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S. 489, 495 (1982) ("A [defendant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.").

In the decades-long application of § 1001, no court to date appears to have held the statute unconstitutionally vague – and the defendant cites no case standing for that proposition.   The

defendant's motion merely invokes a single out-of-Circuit case from 1972, *United States v. Bedore*, 455 F.2d 1109 (9th Cir. 1972), which in fact predates the addition of "materiality" to § 1001.  In any event, *Bedore* was effectively overruled by the Supreme Court in *Brogan v. United States*, 522 U.S. 398 (1998), which squarely refuted the premise – quoted by the defendant's motion – that only certain false statements that "might pervert or corrupt the authorized functions of those agencies to whom the statements were made" are proscribed by § 1001. ECF 47, at 6 (quoting *Bedore*, 455 F.2d at 1111).[1]  *See generally United States v. Kim*, 808 F. Supp. 2d 44, 58 (D.D.C. 2011) (recounting *Brogan*'s rejection of the "exculpatory no" defense underlying *Bedore*).

The handful of courts that have addressed vagueness claims in the § 1001 context have readily rejected such claims.  *See United States v. Phillipos*, 849 F.3d 464, 477 (1st Cir. 2017); *United States v. Gibson*, 409 F.3d 325, 334 (6th Cir. 2005); *United States v. Kirby*, 587 F.2d 876, 884 (7th Cir. 1978); *United States v. Matanky*, 482 F.2d 1319, 1322 (9th Cir. 1973).  In *Phillipos*, for instance, the First Circuit found "unavailing" the argument that the "materiality" requirement renders it "not clear which statements fall under section 1001 and which do not."  849 F.3d at 476. Reasoning that "[a] criminal statute is not unconstitutionally vague merely because it sets forth a standard for determining liability that is not mathematically precise," the court noted that "here, the challenged standard—'materiality'—is a familiar one" whose "'use in the context of false statements to public officials goes back as far as Lord Coke' in 1680."  *Id.* at 477 (quoting *Kungys v. United States*, 485 U.S. 759, 769 (1987)).  Indeed, the Supreme Court has specifically recognized

---

[1] *Bedore* was one of a number of so-called "exculpatory no" cases whose rationale was abrogated in *Brogan*.  The Supreme Court rejected those cases' "major premise that only those falsehoods that pervert governmental functions are covered by § 1001" and "minor premise that simple denials of guilt to Government investigators do not pervert governmental functions." *Id*. at 401-02.  *Brogan* instead underscored that § 1001 covered "'any' false statement – that is, a false statement 'of whatever kind'" – "since it is the very purpose of an investigation to uncover the truth, any falsehood relating to the subject of the investigation perverts that function." *Id*. at 402.

that "'federal courts have long displayed a quite uniform understanding of the 'materiality' concept as embodied in such statutes" as "18 U.S.C. § 1001." *Kungys*, 485 U.S. at 770; *see also Kim*, 808 F. Supp. 2d at 58-59 (quoting *Kungys* in rejecting motion to dismiss § 1001 charge in an indictment).  Pursuant to that relatively "uniform understanding" of "materiality" from routine applications of the term in a variety of statutes, "'a concealment or misrepresentation is material if it 'has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed.'" *Kim*, 808 F. Supp. 2d at 59 (quoting *Kungys*); *accord United States v. Gaudin*, 515 U.S. 506, 509 (1995).  Given that substantial body of law developed around "materiality," moreover, section 1001 plainly cannot be said to "specif[y] no standard of conduct at all."  *Bronstein*, 849 F.3d at 1107.

At bottom, a person of ordinary intelligence would have "fair notice" of what § 1001 proscribes.  The statutory language is far afield from being "so standardless" as to encourage "seriously discriminatory enforcement."  *Williams*, 553 U.S. at 304 (2008).  And the void-for-vagueness doctrine is particularly inapplicable here, where § 1001(a)(2) requires that any false statements be made "knowingly and willfully," as it is well-settled that "where a statute explicitly provides that a criminal violation of its terms must be willful, the void-for-vagueness doctrine is especially inapposite … since the statute itself ensures that good-faith errors are not penalized." *United States v. Wu*, 711 F.3d 1, 15 (1st Cir. 2013).  The defendant's vagueness challenge is unsupported by law and should be denied.

## II.    To The Extent Defendant Argues That His False Statements Were Not "Materially False," a Grand Jury Found Otherwise.

Although the defendant styles his motion as a void-for-vagueness challenge, he also notes in passing that this "investigation ... was 100 percent centered around the invasion of the United States Capitol on January 6, 2021" and "[w]hether or not the defendant was in possession of a

8

knife on January 6, 2021 has absolutely no bearing on the investigation or the involvement of John Sullivan in the invasion." ECF 47, at 5. To the extent the defendant is arguing that his false statements were not sufficiently "material" to the FBI's criminal investigation, the numerous weapons charges he faces based on subsequently obtained evidence showing him to have wielded a weapon – the very matter that he lied about – indicate otherwise. The notion that whether a defendant possessed a dangerous weapon inside the Capitol has "absolutely no bearing" on a criminal investigation into that defendant's conduct inside the Capitol, ECF 47, at 5, is untenable. *See Kim*, 808 F. Supp. 2d at 59 ("A false statement concerning the subject of an investigation will generally be deemed material because it will have a tendency to influence the investigators.").

More importantly, the defendant's argument is premature. While the defendant may dispute whether his false statements were materially false, a grand jury of the District of Columbia found otherwise. The question of materiality, under all the factual circumstances and the totality of evidence, is now "one for the jury." *Kim*, 808 F. Supp. 2d, at 59; *see also United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005) ("Rule 12(b) does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds"). As is well-settled, a "pretrial motion to dismiss an indictment allows a district court to review the sufficiency of the government's pleadings, but it is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 154 (D.D.C. 2015). To the extent the defendant claims that his statements were immaterial under the facts, that issue is inappropriate for Rule 12(b) disposition.

## **CONCLUSION**

WHEREFORE, the United States respectfully requests that the defendant's Motion to

Dismiss Count Eight of the Superseding Indictment be denied.

Respectfully submitted,

CHANNING D. PHILLIPS
United States Attorney
D.C. Bar No. 415793

*/s/ Candice C. Wong*

By:   Candice C. Wong
      D.C. Bar No. 990903
      Assistant United States Attorney
      555 4th Street, N.W., Room 4816
      Washington, D.C. 20530
      (202) 252-7849
      candice.wong@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 8, 2021, I caused a copy of the foregoing motion to be served on counsel of record via electronic filing.

*/s/ Candice C. Wong*
Candice C. Wong
Assistant United States Attorney
