# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

**v.**                                **21-cr-78(EGS)**

**JOHN SULLIVAN**

## REPLY TO OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS

Defendant, by and through undersigned counsel, in reply to the Government's Opposition to Motion to Suppress Statements, does hereby state as follows:

Defendant agrees that the relevant chronology of interaction with law enforcement commences with an interview on January 7, 2021 in Washington, D.C. and consists of another interview with the F.B.I. in Salt Lake City on January 11, 2021. However, the purpose of the second interview was simply to provide video footage to law enforcement taken by defendant of events at the United States Capitol on January 6, 2021. It was not the intention of defendant to submit to interrogation during the second interview on January 9, 2021. As set forth in the Government's Opposition, "On January 11, 2021, FBI Special Agent Mathew Foulger from the Salt

Lake City Filed Office, -the defendant's home district-sought to visit the defendant to receive the remaining footage." ECF 48, page 3.

Defendant emphasizes the specific dialogue between the two FBI agents and defendant while inside his home.

FBI: Do you know why we're here?

JS: Probably Capitol Stuff?

FBI: Yeah. So. Last week you spoke with our colleagues in DC., right? And, they said you had additional video.

JS. I do, yeah.

The "Capitol stuff" that was discussed in the District of Columbia on January 7, 2021 was exclusively related to the filming of events that occurred inside the United States Capitol. The interrogation that occurred in the District of Columbia had absolutely nothing to do with whether defendant had a weapon in his possession on January 6, 2021.

The dialogue on January 11, 2021 in Salt Lake City lasted approximately 35 minutes and initially related to the videotape. At one point during the conversation, the FBI switched topics and asked defendant an intentionally incriminating statement concerning whether he had a weapon in his possession. The question was intentionally incriminating for the following reasons:

The FBI had previously seen video footage and supposedly heard defendant speaking about possessing a knife. Therefore, there was no reason to ask the question about a weapon other than to have defendant make a potentially incriminating statement by agreeing to possessing a weapon or by making an incriminating statement denying he had a knife as that could lead to the additional charge of making a false statement to law enforcement. The latter is precisely what happened as defendant's response to interrogation initiated by the F.B.I. resulted in the superseding indictment and the addition of Count 8 in the superseding indictment.

It is absolutely clear that the multiple FBI agents who went to defendant's home on January 11, 29021 did not arrive with the sole intent of acquiring a videotape. They went with the specific intent and purpose to obtain an incriminating statement from defendant.

Defendant was under the very reasonable belief that he was a target of the investigation of criminal activities that occurred at the United States Capitol on January 6, 2021. He was interrogated in Washington, D.C. on January 7, 2021 and then interrogated by other law enforcement officials in Salt Lake City on January 11, 2021. He was confronted my multiple FBI agents at his home on January 11, 2021 and was not informed he could deny speaking with the FBI agents. Defendant was under the impression

that the agents were at his home to acquire a videotape and the agents
initiated the conversation about a weapon. The conversation that the FBI
initiated regarding weapons was not spontaneous. It was a planned out
decision designed to obtain incriminating evidence from defendant.

Custody is an acknowledged predicate for the requirement of *Miranda*
warnings. However, it is well established that custody is not limited to
formal arrests but includes "restraints on freedom of movement that are the
functional equivalent of a formal arrest." *California v. Beheler,* 463 U.S.
1121, 1125 (1983).  The Supreme Court has phrased the inquiry as
"whether a reasonable person [would] have felt he or she was not at liberty
to terminate the interrogation and leave." *Thompson v. Keohane,* 516 U.S.
99, 112 (1995). Further, it is established that questioning in one's own
home can constitute a custodial interrogation., See *Orozco v. Texas*, 394
U.S. 324,(1969).

The fact that the questioning took place in defendant's home is
significant. The 2nd Circuit has noted, "The home is 'the most
constitutionally protected place on earth; thus the right to terminate the
interrogation and be free to leave is hollow if one place that the individual
cannot retreat to, or exclude law enforcement from, is her home." *United*

States v. Faux, 828 F.3d 130,13 (2nd Cir. 2016), citing *United States v. Craighead*, 539 F.3d 1073, 1082-83 (9th Cir. 2008).

In *Howes v. Fields*, the Supreme Court sought to define custody for purposes of *Miranda* and concluded in part that, "in order to determine how a suspect would have gauged his freedom of movement, courts must examine all of the circumstances surrounding the interrogation." 566 US 499, 509 (2012).

In sum, custody is to be decided on a case-by-case basis. Several factors suggest that defendant reasonably believed he was in custody at the second interview:

a. This was his second interrogation that went beyond the agreed upon reason for the meeting to turn over a videotape;

b. Defendant was alone at the time of interrogation which involved two experienced F.B.I. agents;

c. Turning over a videotape would ordinarily take a matter of seconds. The questioning went on for 35 minutes;

d. Defendant was not on verbal notice the agents were going to arrive at his house;

e. The purpose of the interview was to obtain incriminating information from defendant with the Agent asking: "Did you have a wea—a gun or anything on you?" and "No knife or anything like that?"

For the foregoing reasons, and for those set forth in defendant's opening Motion to Suppress Statements, defendant seeks suppression of all statements made to the F.B.I. in his home on January 11, 2021.

Respectfully submitted,


_____/s/_____
Steven R. Kiersh#323329
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015
(202) 347-0200

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a truce and accurate copy of the foregoing was served via the Court's electronic system, on this the 26th day of October, 2021 upon the Office of the U.S. Attorney, Candice Wong, Esquire, Assistant U.S. Attorney.

_____/s/_____
Steven R. Kiersh