**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.

JOHN SULLIVAN,

              Defendant.

Crim. Action No. 21-78
(EGS)

<u>**MEMORANDUM OPINION**</u>

Defendant John Sullivan ("Mr. Sullivan") is charged in a multi-count Superseding Indictment arising from his alleged participation in the events at the U.S. Capitol on January 6, 2021. *See* Superseding Indictment, ECF No. 56. Now pending before the Court is Mr. Sullivan's motion to release the seizure order related to his bank account in Utah and to forbid seizures of other accounts. *See* Def.'s Mot., ECF No. 25. Mr. Sullivan requests that the Court issue an order "discharging the seizure of his bank account in Utah and to prevent any further seizures of other bank accounts belonging to defendant." *Id.* at 1.[1] In conjunction with his motion, Mr. Sullivan has also requested a "post-deprivation, pretrial hearing" to challenge the

---

[1] When citing electronic filings throughout this Memorandum Opinion, the Court cites to the ECF page number, not the page number of the filed document.

sufficiency of the government's evidence supporting the seizure of assets. *Id.* at 4.

Upon consideration of the motion, the response, and reply thereto, the applicable law, and the entire record herein, the Court **DENIES** Mr. Sullivan's motion.

## I. Procedural History

On February 3, 2021, Mr. Sullivan was charged in a six-count Indictment alleging the following violations of law: (1) obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; (2) civil disorder and aiding and abetting, in violation of 18 U.S.C. §§ 231(a)(3) and 2; (3) entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); (4) disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); (5) disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (6) parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. 5104(e)(2)(G). *See* Indictment, ECF No. 8.

On April 28, 2021, a magistrate judge approved two sealed warrants authorizing the government's seizure of $89,875 in Mr. Sullivan's bank account ending in 7715 and $1,000 in the Venmo account linked to Mr. Sullivan's bank account. *See* Gov't's Opp'n, ECF No. 29 at 10. The magistrate judge found probable

cause to believe that the assets were forfeitable based on the supporting affidavit stating that the "funds Sullivan obtained by filming and selling footage of the January 6, 2021 Capitol riots . . . would not have existed but for Sullivan's illegal participation in and encouragement of the riots, property destruction, and violence inside the U.S. Capitol in violation of 18 U.S.C. § 1512(c)." *Id.* The warrants were served on April 29, 2021, and the government seized a balance of $62,813.76 from the bank account ending in 7715. *Id*.

On May 19, 2021, Mr. Sullivan was charged in a Superseding Indictment that included two further charges and a forfeiture allegation. In addition to the charges in the initial Indictment, the Superseding Indictment charged Mr. Sullivan with the following new violations: (1) unlawful possession of a dangerous weapon on Capitol grounds or buildings, in violation of 40 U.S.C. § 5104(e)(1)(A)(i); and (2) false statement or representation made to an agency of the United States, in violation of 18 U.S.C. § 1001(a)(2). *See* Superseding Indictment, ECF No. 26. The Superseding Indictment also sought, upon conviction of the offense of obstruction of an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2), forfeiture of "any property, real and personal, which constitutes or is derived from proceeds traceable to the commission of the offense alleged." *Id.* The forfeiture allegation specified, as property

3

to be sought upon such a conviction, $89,875 in Mr. Sullivan's bank account ending in 7715 and $1,000 in the Venmo account ending in 2020 linked to Mr. Sullivan's bank account. *Id.* Mr. Sullivan was charged in a further Superseding Indictment on November 10, 2021. *See* Superseding Indictment, ECF No. 56.

On May 7, 2021, Mr. Sullivan filed a motion to release the seizure order related to his bank account in Utah and to forbid seizures of other accounts. *See* Def.'s Mot., ECF No. 25. The government filed its opposition on May 21, 2021, *see* Gov't's Opp'n, ECF No. 29; and Mr. Sullivan filed his reply brief on June 2, 2021, *see* Def.'s Reply, ECF No. 31. The motion is ripe for adjudication.

## II. Analysis

Mr. Sullivan seeks a hearing on the government's seizure of assets he claims he needs to pay his rent and other "household necessities." Def.'s Mot., ECF No. 25 at 5. He does not argue that access to the seized assets is necessary for an effective exercise of the Sixth Amendment right to counsel. *See* Def.'s Reply, ECF No. 31 at 1. He does, however, argue that "the proceeds of the seized bank account are not the product of criminal activity alleged in the indictment," and that he "is being deprived of his needed [assets] . . . in violation of the Due Process Clause of the United States Constitution." Def.'s Mot., ECF No. 25 at 5.

4

The government opposes Mr. Sullivan's request for the
release of the seized assets and for a pretrial hearing. The
government argues that there is a "dearth of caselaw supporting
a pretrial hearing to contest the seizure where, as here, no
Sixth Amendment right is at stake and the claimed basis is a
need to pay household expenses." Gov't's Opp'n, ECF No. 29 at
17. Moreover, even if a pretrial hearing was appropriate in such
a context, the government contends that "[m]ore than conclusory
allegations of a need to pay rent and unspecified household
expenses is required as a condition precedent." *Id.* at 18.
Finally, the government argues that, even if the Court reaches
the issues, the seized assets are sufficiently connected to Mr.
Sullivan's alleged obstruction of an official proceeding on
January 6, 2021. *Id.* at 22.

For the reasons discussed below, the Court concludes that a
hearing is not warranted in this case and denies Mr. Sullivan's
motion.

**A. Legal Framework**

"Forfeitures help to ensure that crime does not pay: They
at once punish wrongdoing, deter future illegality, and 'lessen
the economic power' of criminal enterprises." *Kaley v. United
States*, 571 U.S. 320, 323 (2014) (quoting *Caplin & Drysdale,
Chartered v. United States*, 491 U.S. 617, 631 (1989)).
Accordingly, the Supreme Court has long recognized the "strong

governmental interest in obtaining full recovery of all forfeitable assets." *Id.* (quoting *Caplin & Drysdale*, 491 U.S. at 631).

The pretrial seizure of forfeitable property is authorized by 21 U.S.C. § 853.[2] *See United States v. Bikundi*, 125 F. Supp. 3d 178, 184 (D.D.C. 2015). Under Section 853, the government may request a warrant from a federal court authorizing the pretrial seizure of property subject to forfeiture "in the same manner as provided for a search warrant." 21 U.S.C. § 853(f). "Once the government has obtained a seizure warrant pursuant to 21 U.S.C. § 853(f), the Federal Rules of Criminal Procedure provide for no further inquiry into the property's forfeitability until

---

[2] According to the government, the funds at issue are subject to seizure under 18 U.S.C. § 981(a)(1)(C), used in conjunction with 28 U.S.C. § 2461(c), because Mr. Sullivan is charged with obstruction of an official proceeding in violation of 18 U.S.C. § 1512. *See* Gov't's Opp'n, ECF No. 29 at 12. Section 2461(c) states that "[i]f the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case." *See* Gov't's Opp'n, ECF No. 29 at 12 (quoting 28 U.S.C. § 2461(c)). By application of Section 2461(c), forfeiture of property is mandated for an "obstruction of an official proceeding" violation because it is a racketeering activity identified in 18 U.S.C. § 1961(1), which is in turn a "specified unlawful activity" under 18 U.S.C. § 1956(c)(7)(A). Forfeiture is imposed through Section 981(a)(1)(C), which provides for forfeiture of "any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in [S]ection 1956(c)(7) of this title)." *United States v. Clark*, 165 F. Supp. 3d 1215, 1218 (S.D. Fla. 2016).

disposition of the criminal charges on which the forfeiture is predicated." *Bikundi*, 125 F. Supp. 3d at 184 (citing Fed. R. Crim. P. 32.2(b)(1)(A)). At a post-trial or post-plea hearing, "[i]f the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A).

"Notwithstanding the post-conviction process provided by Rule 32.2, the Supreme Court [in *Kaley v. United States*, 571 U.S. 320 (2014)] has made clear that pretrial seizure, pursuant to 21 U.S.C. § 853(f), necessarily requires two probable cause findings: (1) that 'the defendant has committed an offense permitting forfeiture;' and (2) that 'the property at issue has the requisite connection to that crime.'" *Bikundi*, 125 F. Supp. 3d at 184 (quoting *Kaley*, 571 U.S. at 324). In *Kaley*, the Supreme Court addressed "'whether the Due Process Clause requires a [pretrial] hearing' to establish either or both . . . aspects of forfeitability." 571 U.S. at 324. The Supreme Court explained that a defendant is not entitled to a pretrial hearing on the first requirement—whether there is probable cause that the defendant has committed an offense permitting forfeiture— because "[t]he grand jury's determination is conclusive." *Id.* at 331; *see also id.* at 322. However, the court declined to decide whether a pretrial hearing should be provided when the defendant

challenges the second requirement—whether there is probable
cause that the property at issue is traceable to the crime. *Id.*
at 324 n.3.

Though the Supreme Court declined to opine on whether a
hearing is required to establish traceability, lower courts,
including the United States Court of Appeals for the District of
Columbia Circuit ("D.C. Circuit"), "have generally provided a
hearing to any indicted defendant seeking to lift an asset
restraint to pay for a lawyer." *Id.* at 324. For example, in
*United States v. E-Gold, Ltd.*, 521 F.3d 411 (D.C. Cir. 2008),
the D.C. Circuit recognized that when the Sixth Amendment right
to counsel is implicated, a pre-trial hearing on the
forfeitability of the property at issue is required under the
three-pronged test set out in *Mathews v. Eldridge*, 424 U.S. 319
(1976), for "determining the due process rights of citizens who
were subjected to the seizure of their property or other
constitutionally protected interests." *E-Gold*, 521 F.3d at 416.

However, the D.C. Circuit has never addressed the question
at issue in this case: whether the due process rights of a
defendant require a pretrial evidentiary hearing "when the
assets are not necessary to obtaining counsel of choice." *Id.* at
421 (declining to consider "whether the due process rights of
the defendants compel such a hearing when the assets are not
necessary to obtaining counsel of choice"). But while the

question in this case remains undecided before the D.C. Circuit and Supreme Court, at least one court in this District has taken up the issue. In *United States v. Bikundi*, 125 F. Supp. 3d 178 (D.D.C. 2015), the district court found that Rule 32.2 did not "preclude[] an indicted defendant from invoking his due process rights before trial to test the sufficiency of probable cause for the forfeitability of seized property." *Id.* at 187-88. Though the defendant's request was based upon the alleged need to access seized funds to pay for household necessities, the court weighed the *Mathews* factors and found that due process required it to provide "pretrial judicial review of the challenged seizure warrants," even though the defendant raised "no Sixth Amendment claim that the seizure of the Disputed Funds implicates his right to counsel." *Id.* at 183, 191. Critical to its decision were the defendant's substantial evidence regarding "near-term financial obligations and his apparent inability to meet those obligations without release of the seized assets," as well as express disclaimers regarding the traceability of the assets in the government's affidavit supporting the seizure warrant. *Id.*

Set against this legal backdrop, the Court now turns to the parties' arguments.

## B. A Pretrial Hearing Is Not Warranted

Even if the Court agreed with the reasoning of *Bikundi* and concluded that Rule 32.2 did not preclude a pretrial hearing where access to the assets is necessary to pay for household necessities, a pretrial hearing would not be warranted in this case.

First, Mr. Sullivan has not made the threshold showing that he cannot pay for rent or other household necessities without access to the seized assets. *See United States v. Edwards*, 856 F. Supp. 2d 42, 45 (D.D.C. 2012) (denying motion for release of funds where defendant failed to make "threshold showing" that he could not obtain counsel without the seized funds); *United States v. Emor*, 794 F. Supp. 2d 143, 149-50 (D.D.C. 2011) (same). "Every court that has addressed the issue has found that a defendant's merely conclusory allegation that he lacks the funds to retain counsel of choice is insufficient to trigger the need for a . . . hearing; in order to obtain a hearing the defendant must present some evidence that he will be deprived of counsel of choice if he cannot access the seized assets." *United States v. Emor*, 794 F. Supp. 2d 143, 149 (D.D.C. 2011) (citing cases); *see also E-Gold*, 521 F.3d at 417, 421 (stating that a defendant has right to hearing where "need is clearly established," and where "access to assets is necessary for an effective exercise of the Sixth Amendment right to counsel").

Here, Mr. Sullivan has submitted a declaration to the Court that merely provides a "summary" of his "monthly household needs" totaling $4,800 a month, as well as a "*partial* listing of sources of . . . income." Sullivan Decl., ECF No. 31-1 at 1 (emphasis added). Mr. Sullivan does not provide any further information relevant to his ability to pay rent, including what his other sources of income may entail. For example, the Court is aware that Mr. Sullivan is currently employed by his father, *see* Status Report, ECF No. 38 at 2; yet he provides no documentation regarding this employment and it is not listed as a source of income in his declaration. Nor does the Court have any information regarding how much Mr. Sullivan earns or the value of any assets he may have. Without such information, the Court cannot determine whether Mr. Sullivan lacks the funds necessary to provide for his household needs, or whether he is presently able to pay his monthly expenses via other methods. *Cf. Emor*, 794 F. Supp. 2d at 150 ("[N]o legal authority of which the Court is aware can be read to suggest that due process requires a hearing whenever a defendant merely prefers to use restrained funds rather than untainted assets to pay his counsel of choice." (internal quotation marks omitted)).

The cases Mr. Sullivan primarily relies upon in support of his motion only serve to emphasize the deficiencies in his declaration. For example, in *Bikundi*, the district court granted

11

pretrial review of the seizure warrants partially based on evidence that the defendant "[was] unable to pay his utility bills, such that he must rely on borrowed funds to do so"; "evidence that he [was] unable to pay for his children's preschool education and ha[d] recently lost private insurance coverage"; and evidence regarding his "property taxes, such that his home [was] subject to a tax sale." *Bikundi*, 125 F. Supp. 3d at 190. Similarly in *E-Gold*, the D.C. Circuit found sufficient an affidavit from one of the defendants "detailing his status as a potential beneficiary of a trust, his lack of other sources of income, his liquid and non-liquid assets (including cars), his debts (including credit cards and monthly rent), his wife's income, and his dependents and assets held in the name of the dependents." *Edwards*, 856 F. Supp. 2d at 54 (summarizing the facts of *E-Gold*). Another defendant in the same case "likewise outlined his monthly expenses, gross and net income from his law practice, all assets and their values, as well as his other outstanding debts." *Id.* (summarizing the facts of *E-Gold*).

And significantly, Mr. Sullivan does not address information included within a pretrial services agency report documenting "multiple vehicles owned by the defendant," as well as "significant funds in unspecified bank accounts of the defendant – funds that wholly predate, and lie entirely outside the scope of, the government's seizure warrants." *See* Gov't's

12

Opp'n, ECF No. 29 at 21. Mr. Sullivan also does not dispute the government's contention that he has "at least one other bank account . . . with America First Credit in which he retained a positive balance as of March 19, 2021." Gov't's Opp'n, ECF No. 29 at 21. At the least, this information suggests that Mr. Sullivan enjoys assets beyond those seized by the government that he could use toward paying for rent and his other household necessities. Thus, absent more information, the Court finds that Mr. Sullivan has not met the threshold standard for a pretrial hearing relating to his seized assets. *See, e.g.*, *Edwards*, 856 F. Supp. 2d at 45 (finding defendant failed to make threshold showing for a hearing where defendant submitted a declaration stating only that "[b]eyond the money seized, I do not have any available funds to pay Attorney Balarezo's retainer"); *Emor*, 794 F. Supp. 2d at 149 (finding declaration insufficient to trigger a hearing where defendant submitted a declaration stating "that he lacks any income or investments, that his spouse is not employed, that he has six dependents, and that he has only between $22,000 and $50,000 in cash on hand or money in savings or checking accounts").

Second, even if the Court proceeded to "ascertaining the requirements of the due process clause" by "look[ing] . . . to the Supreme Court's declarations in *Mathews v. Eldridge*," *E-Gold*, 521 F.3d at 415; the result would remain the same. The

*Mathews* factors, as articulated by *Kaley*, require a court to weigh "(1) the burdens that a requested procedure would impose on the Government against (2) the private interest at stake, as viewed alongside (3) the risk of an erroneous deprivation of that interest without the procedure and the probable value, if any, of the additional procedural safeguard." *Kaley*, 571 U.S. at 333 (quoting *Mathews*, 424 U.S. at 335) (internal quotations and alterations omitted). Regarding the first factor, the Court notes that even assuming that "the requested pretrial hearing would necessarily impose some burden of time and resources on the government to preview how" the seized assets were tracked to the alleged offense, *Bikundi*, 125 F. Supp. 3d at 190; courts have found that these interests may be "outweighed by a criminal defendant's interest in obtaining the counsel of his or her choice," *Sunrise Academy v. United States*, 791 F. Supp. 2d 200, 207 (D.D.C. 2011) (citing *E-Gold*, 521 F.3d at 419). Here, however, Mr. Sullivan's interest in acquiring access to the seized funds for rent and household necessities "is obviously far less pressing" than a defendant's exercise of his Sixth Amendment right. *See id.* And regarding the second factor—Mr. Sullivan's private interest—the Court acknowledges that Mr. Sullivan does not "expect[] that this matter will be tried in the near future" due to the complex nature of discovery in this case and his anticipated "numerous pretrial motions." Def.'s

14

Reply, ECF No. 31 at 5. But, as stated above, Mr. Sullivan has
not provided any evidence demonstrating that he is unable to pay
for rent or other household necessities without the seized
assets. Put simply, the Court has no reason to believe that Mr.
Sullivan will be significantly harmed if adjudication of his
claim is delayed until a post-trial proceeding pursuant to
Federal Rule of Criminal Procedure 32.2. Finally, the third
factor—risk of erroneous deprivation—also does not fall in Mr.
Sullivan's favor. While there may inevitably be "some risk" that
the "probable cause finding reached in a nonadversarial context
by a magistrate judge" is erroneous, *Sunrise Academy*, 791 F.
Supp. 2d at 206; Mr. Sullivan's conclusory allegation that the
proceeds of the seized bank account are not the product of the
criminal activity alleged in the indictment carries little
weight. Indeed, in the declaration attached to his reply brief,
Mr. Sullivan "acknowledge[s] that some of [his] assets were
obtained from sale of videotape from January 6, 2021." *See*
Sullivan Decl., ECF No. 31-1 at 2. Based on the above, the Court
thus finds that Mr. Sullivan has fallen short of the showing
required to justify the holding of a pretrial hearing.

## II. Conclusion

For the reasons stated above, Mr. Sullivan's motion to
release the seizure order related to his bank account in Utah

and to forbid seizures of other accounts, ECF No. 25, is **DENIED.**

An appropriate Order accompanies this Memorandum Opinion.

       **SO ORDERED.**

**Signed:**     **Emmet G. Sullivan**
               **United States District Judge**
               **December 6, 2021**