UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 21-CR-78-EGS |
| | : | |
| JOHN EARLE SULLIVAN, | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S "MOTION FOR RECONSIDERATION OF DECEMBER 6, 2021 DENIAL OF MOTION TO RELEASE SEIZURE ORDER AND SUPPLEMENT TO MOTION TO RELEASE SEIZURE ORDER"**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in opposition to the defendant's "Motion for Reconsideration of December 6, 2021 Denial of Motion to Release Seizure Order and Supplement to Motion to Release Seizure Order." D.E. 61.[1] The motion should be denied. The Court's well-reasoned, 16-page ruling was thorough and correct.

Motions to reconsider "apply only to 'extraordinary situations' and 'should be only sparingly used.'" *United States v. Pollard*, 290 F. Supp. 2d 153, 157 (D.D.C. 2003). Such extraordinary contexts include, for instance, "whether the Court 'patently' misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has

---

[1] Due to the holiday, the undersigned previously obtained defense counsel's consent to respond to defendant's motion, filed on December 17, 2021, on Monday, January 3, 2022, rather than Friday, December 31, 2021, and notified Chambers in advance.

1

occurred." *Isse v. Am. Univ.*, 544 F.Supp.2d 25, 29 (D.D.C. 2008). "'[W]hile the law of the case doctrine does not necessarily apply to interlocutory orders, district courts generally consider the doctrine's underlying rationale when deciding whether to reconsider an earlier decision'"; thus, motions for reconsideration are "'subject to the caveat that, where litigants have once battled for the Court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *United States v. Sunia*, 643 F. Supp. 2d 51, 61 (D.D.C. 2009). The defendant's motion – which attempts to supplement his claim of financial need, and makes no claim of a change in law or clear error – falls well short of the demanding standard that reconsideration merits.

The defendant's motion for reconsideration seeks to revive his request "that the Court issue an order 'discharging the seizure of his bank account in Utah and to prevent any further seizures of other bank accounts belonging to defendant'" and hold a "'post-deprivation, pretrial hearing' to challenge the sufficiency of the government's evidence supporting the seizure of assets." D.E. 60, at 1-2 (quoting Deft's Motion). Specifically, the motion attempts to fill in certain illustrative gaps highlighted by the Court in discussing the defendant's deficient threshold showing of financial need. But as discussed at greater length below, even if the defendant's newest factual claims were to be credited, they are non-responsive to much of the Court's reasoning undergirding the denial: The defendant's threshold showing remains, at best, incomplete. Even if the defendant were found to have made a threshold showing, this Court's denial of his motion unambiguously relied on reasons *in the alternative* to that deficient threshold showing. And the motion offers no supplement whatsoever to his conclusory challenge to traceability – the ultimate issue on which the defendant claims a pretrial hearing is required to contest – a matter on which this Court's opinion already observed that his argument "carries little weight."

First, it remains questionable whether the defendant has carried his burden of "clearly establish[ing]" a need for seized assets to satisfy rent or other "household necessities." *Cf. United States v. E-Gold, Ltd.*, 521 F.3d 411, 417, 421 (D.C. Cir. 2008); *United States v. Unimex, Inc.*, 991 F.2d 546, 551 (9th Cir. 1993) ("To determine whether a hearing is required, the court must decide whether the moving papers filed, including affidavits, are sufficiently definite, specific, detailed, and nonconjectural"). There remain factual gaps and issues raised by the defendant's shifting, conjectural, and otherwise vague representations.[2] As an initial matter, upon his January 14, 2021 arrest and ensuing Pretrial Services interview, the defendant put his monthly expenses at "$2,000-$2,250." The defendant's reply to his motion for release of funds then placed his monthly household needs at $4,800. The defendant's reconsideration motion now again increases his monthly household needs to $6,018.44 ($72,221 per year) – over three times what he reported upon arrest.

The government also notes that the defendant reported to Pretrial Services upon his January 14, 2021 arrest that he had $51,000 of funds in his bank accounts. The defendant earned at least $90,875 in proceeds from his January 6 footage, all of which was deposited into his bank account after his Pretrial Services interview. The government in late April 2021 seized only $62,813.76 from a single bank account of the defendant, raising reasonable questions about where and how the defendant apparently handled or expended the remaining approximately $80,000 in that time.

In any event, this Court's 16-page opinion observed that "Mr. Sullivan has submitted a

---

[2]Certain questions are raised by the defendant's latest representations. For instance, he attributes his credit score falling to 559 since *June 2020* to the April 2021 seizure. In fact, his report shows that on April 23, 2021, days *before* the seizure warrants were served, his credit score already dipped to 566. He also characterizes the entirety of his credit card statement balances from one month, December 2021, as "credit card debt" without explanation or unpacking.

declaration to the Court that merely provides a 'summary' of his 'monthly household needs' totaling $4,800 a month, as well as a '*partial* listing of sources of … income'" without "any information regarding … the value of any assets he may have." D.E. 60 at 11. As noted, the defendant has now proffered another such "summary" listing needs totaling $6,018.44. It is not self-evident that various line items encompassed in his summaries – *e.g.,* $250 in monthly "subscriptions"; a "minimum credit card payments" expense on top of his enumerated household expenses; or $250 in "entertainment," $100 in "shopping," $150 in "savings," or $300 in "self care" as in his original listing – comprise *bona fide* "household necessities." It is also unclear why the defendant's summary has now, without explanation, dropped two "sources of income" he previously noted ("Google ad sense deposits" and "401 K Deposits"). Nor is it explained what happened to the "approximately $450 per month from previous contracts he obtained while working as a freight broker" that he told Pretrial Services he was "still receiv[ing]" upon his arrest. And the defendant still has not provided any comprehensive listing of his "liquid and non-liquid assets," even as he acknowledges that he has been able to sell certain non-liquid assets this year "to pay expenses." D.E. 61 at 15; *cf.* D.E. 60 at 12 (comparing defendant's declaration to detailed proffers about assets made by the defendants in *E-Gold*).

Second, this Court's denial unambiguously relied on reasons in the alternative to, and in addition to, his deficient "threshold showing" of financial need – alternative reasons that the reconsideration motion does not address. This Court went on to rule, "Second, even if the Court proceeded to 'ascertaining the requirements of the due process clause' by 'look[ing] … to the Supreme Court's declarations in *Mathews v. Eldridge*' *… the result would remain the same.*" D.E. 60 at 13 (emphasis added). The Court proceeded to observe that "Mr. Sullivan's interest in

4

acquiring access to the seized funds for rent and household necessities 'is obviously far less pressing' than a defendant's exercise of his Sixth Amendment right." D.E. 60 at 14. Indeed, courts have contrasted the extraordinary permanence of injury in a trial tainted by a violation of the defendant's Sixth Amendment right – a "right that must be addressed before trial, if it is to be addressed at all" – with "a defendant's wish to use his property in whatever manner he sees fit." *United States v. Monsanto*, 924 F.2d 1186, 1193 (2d Cir. 1991). And "as for the "risk of erroneous deprivation" under *Mathews*, this Court noted that the defendant's "conclusory allegation that the proceeds of the seized bank account are not the product of the criminal activity alleged in the indictment *carries little weight*," observing that in his declaration even the defendant acknowledged that assets of his were "'obtained from sale of videotape from January 6, 2021.'" D.E. 60 at 15 (emphasis added). Those reasons remain fully intact, and the balancing of considerations – even if the defendant's additional claims about his finances are to be credited – still weighs in favor of adjudicating his arguments at a post-trial proceeding in the ordinary course. *See Kaley v. United States*, 571 U.S. 320, 334 (2014) (finding that no pretrial hearing was warranted "[e]ven if *Mathews* applied"; because "a seizure of the Kaleys' property is erroneous only if unsupported by probable cause, the added procedure demanded here is not sufficiently likely to make any difference"); *id.* at 327 ("With probable cause, a freeze is valid" and nothing about even a "defendant's interest in retaining a lawyer with the disputed assets change[s] the equation").

At bottom, the reconsideration motion makes additional financial representations, but cites no additional legal authority. The defendant does not dispute, not could he, the legal framework laid out by this Court's opinion. Accordingly, it is not disputed that once the government has

5

obtained a seizure warrant, "the Federal Rules of Criminal Procedure provide for no further inquiry into the property's forfeitability until disposition of the criminal charges on which the forfeiture is predicated."  D.E. 60 at 6.  It is not disputed that the Supreme Court has "declined to opine" on whether a pretrial hearing should be provided to challenge traceability to the crime, nor that, while lower courts have afforded a qualified right to such hearings when the seized assets implicate the right to counsel of choice, "the D.C. Circuit has never addressed the question" outside that right-to-counsel context.  D.E. 60 at 8.  Nor is it in dispute that one decision in this district, *United States v. Bikundi,* 125 F. Supp. 3d 178 (D.D.C. 2015), found "pretrial *judicial review* of the challenged seizure warrants" (and not a pretrial *hearing*) to be warranted despite the absence of a Sixth Amendment claim, but in so holding, found "[c]ritical to its decision … the defendant's substantial evidence regarding 'near-term financial obligations and his apparent inability to meet those obligations without release of the seized assets' *as well as express disclaimers regarding the traceability of the assets in the government's affidavit supporting the seizure warrant*."  D.E. 60 at 9 (emphasis added).

      The pretrial hearing the defendant has requested (as compared to the more limited review of the seizure affidavit undertaken in *Bikundi*) has no precedent in this district beyond the right-to-counsel context.  And the defendant has not pointed to any traceability gaps or disclaimers in the seizure warrants to flesh out red flags remotely analogous to the "critical" second consideration in *Bikundi*.  That bears emphasis because, as noted, the Court already found this defendant's traceability claim – the very issue on which he argues he was erroneously deprived his assets – to be "conclusory" and "carr[y] little weight."  D.E. 60 at 15.  It thus remains the case that the defendant has not even satisfied the premises of *Bikundi* – a decision which, in any event, this

Court did not hold that it was adopting. *Cf.* D.E. 60 at 10 ("Even if the Court agreed with the reasoning of *Bikundi* ….").

In short, as the magistrate judge in this case found in signing two seizure warrants, there is ample probable cause to believe the seized funds – a portion of the $90,875 in profits that the defendant reaped from selling his video footage from his storming and breach of the U.S. Capitol on January 6, 2021 – are forfeitable proceeds. As this Court appropriately recognized, "[t]he pretrial seizure of forfeitable property is authorized" by statute, and part and parcel of the "'strong governmental interest in obtaining full recovery of all forfeitable assets.'" D.E. 60 at 5-6. The defendant is free to contest the forfeitability of the seized funds, but should be limited to doing so in the manner prescribed by Federal Rule of Criminal Procedure 32.2(b)(1)(A) – at trial. That is the process he is due and the Constitution demands nothing more.

## CONCLUSION

WHEREFORE, the United States respectfully requests that the Court deny the defendant's motion for reconsideration of its December 6, 2021 opinion denying the defendant's motion to release the seizure order and forbid seizures of other accounts.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

by:

Candice C. Wong
D.C. Bar No. 990903
Assistant United States Attorney
555 4th Street, N.W., room 4816
Washington, D.C. 20530
(202) 252-7849
Candice.wong@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2022, I caused a copy of the foregoing motion to be served on counsel of record via electronic filing.

Candice C. Wong
Assistant United States Attorney