# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 21-cr-28-APM** |
| | : | |
| **v.** | : | |
| | : | |
| **THOMAS CALDWELL (1),** | : | |
| | : | |
| **DONOVAN CROWL (2),** | : | |
| | : | |
| **JESSICA WATKINS (3),** | : | |
| | : | |
| **SANDRA PARKER (4),** | : | |
| | : | |
| **BENNIE PARKER (5),** | : | |
| | : | |
| **LAURA STEELE (7),** | : | |
| | : | |
| **KELLY MEGGS (8),** | : | |
| | : | |
| **CONNIE MEGGS (9),** | : | |
| | : | |
| **KENNETH HARRELSON (10),** | : | |
| | : | |
| **ROBERTO MINUTA (11),** | : | |
| | : | |
| **JOSHUA JAMES (12),** | : | |
| | : | |
| **JONATHAN WALDEN (13),** | : | |
| | : | |
| **JOSEPH HACKETT (14),** | : | |
| | : | |
| **JASON DOLAN (15), and** | : | |
| | : | |
| **WILLIAM ISAACS (16),** | : | |
| | : | |
| **Defendants.** | : | |

## GOVERNMENT'S OMNIBUS OPPOSITION TO

## DEFENDANTS' MOTIONS TO DISMISS AND FOR BILL OF PARTICULARS

## TABLE OF CONTENTS

**PROCEDURAL BACKGROUND** ................................................................. 1

**FACTUAL BACKGROUND** ....................................................................... 3

**ARGUMENT** ............................................................................................. 4

    I.     LEGAL STANDARD .......................................................................... 4

    II.    COUNTS 1 (CONSPIRACY) AND 2 (OBSTRUCTION OF AN OFFICIAL PROCEEDING) SHOULD NOT BE DISMISSED. .................................. 5

        A.    Congress's Joint Session on January 6 Was an "Official Proceeding." .............. 5

            1.   Background ................................................................... 6

            2.   Congress's Joint Session to certify the Electoral College vote is a "proceeding before the Congress." ............................................................. 7

                a.   Congress's Joint Session satisfies the definition of "official proceeding." ................................................................ 7

                b.   Section 1515(a)(1) imposes no "quasi-judicial" requirement ............ 9

                    i.   Section 1515(a)(1)(B) has no limitation on the type of congressional proceeding ......................................................... 10

                    ii.   Caselaw interpreting Section 1515(a)(1)(C) is inapposite. ................................................................. 12

                    iii.   The title of Section 1512 does not impose a quasi-judicial requirement on the phrase "official proceeding." ................................................................. 13

                    iv.   An internal, out-of-date Department of Justice resource manual is irrelevant ................................................. 15

                    v.   Legislative history does not support incorporating a "quasi-judicial" requirement into Section 1515(a)(1)(B). ................................................................. 16

                  c.   Congress's certification of the Electoral College vote *is* quasi-judicial. ................................................................. 18

        B.    Section 1512(c) is not unconstitutionally vague. ............................... 18

i

1.  Background ........................................................................ 19

2.  The facial challenge to the statute should be rejected.............................. 21

3.  The as-applied challenges to the statute should be rejected. .................... 23

    a.  "Official proceeding" is not unconstitutionally vague as applied to these defendants. ............................................. 23

    b.  "Otherwise" is not unconstitutionally vague as applied to these defendants. .................................................................. 24

C.  The rule of lenity does not apply. ...................................................... 25

D.  The novel-construction principle does not apply ................................ 26

E.  The First Amendment does not protect the defendants' actions....................... 27

III.  COUNT 3 (DESTRUCTION OF PROPERTY) IS PROPERLY PLED.................... 29

IV.  COUNT 4 (RESTRICTED GROUNDS) CONTAINS NO DEFECTS. .................... 30

A.  The identity of the law enforcement agency that erected the barricades around the restricted area is irrelevant. .............................................. 31

B.  The Capitol grounds includes the Capitol building. .......................... 35

C.  There is no contemporaneity requirement in the statute.................... 35

D.  The statute is not unconstitutionally vague as applied to these defendants. .................................................................................... 36

E.  The rule of lenity does not apply. ...................................................... 37

F.  The novel-construction principle does not apply.............................. 37

V.  COUNT 8 (ASSAULTING AN OFFICER) IS PROPERLY PLED, AND A BILL OF PARTICULARS IS NOT WARRANTED. .................................................. 37

VI.  THE OBSTRUCTION OF JUSTICE COUNTS ARE PROPERLY PLED, AND A BILL OF PARTICULARS IS NOT WARRANTED. ................................. 41

A.  The Obstruction of Justice Counts Are Properly Pled. ..................... 41

B.  A Bill of Particulars Is Not Warranted. ............................................ 42

**CONCLUSION** ................................................................................................ 44

The Court should reject the defendants' motions to dismiss counts in the Fourth Superseding Indictment.

## PROCEDURAL BACKGROUND

On May 26, 2021, the grand jury returned a Fourth Superseding Indictment, charging all of the defendants with count 1, conspiracy, in violation of 18 U.S.C. § 371; count 2, obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2), 2; and count 4, entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. §§ 1752(a)(1).[1] Ten of the defendants—Crowl, Watkins, Sandra Parker, Steele, Kelly Meggs, Connie Meggs, Harrelson, Hackett, Dolan, and Isaacs—were also charged with count 3, destruction of government property and aiding and abetting, in violation of 18 U.S.C. §§ 1361, 2. Five of the defendants—Crowl, Watkins, Sandra Parker, James, and Isaacs—were charged with counts 5, 6, and/or 7, civil disorder and aiding and abetting, in violation of 18 U.S.C. §§ 231(a)(3), 2. James was charged with count 8, assaulting, resisting, or impeding certain officers and aiding and abetting, in violation of 18 U.S.C. §§ 111(a)(1), 2. And finally, four of the defendants—Caldwell, Kelly Meggs, Harrelson, and James—were charged with counts 9, 10, 12, and 13, respectively, for tampering with documents or proceedings, in violation of 18 U.S.C. § 1512(c)(1).

Four defendants filed motions to dismiss certain counts in the indictment, and many defendants either moved or noticed their intent to join portions of the motions to dismiss:

---

[1] One of the defendants charged in the Fourth Superseding Indictment, Graydon Young, pled guilty on June 23, 2021 to conspiracy and obstruction of an official proceeding; he is not subject to the current litigation.

- Donovan Crowl moved to dismiss counts 1 (conspiracy) and 2 (obstruction of an official proceeding) (ECF 288). This motion was joined by Caldwell (ECF 291), Watkins (ECF 252), Steele (ECF 309), Kelly Meggs (ECF 255), Connie Meggs (ECF 262), Minuta (ECF 287), Walden (ECF 290), and Isaacs (ECF 303).

- Kenneth Harrelson moved to dismiss counts 1 (conspiracy), 2 (obstruction of an official proceeding), 3 (destruction of property), 4 (restricted grounds), and 12 (obstruction of justice) (ECF 278). This motion was joined by Caldwell (ECF 291), Crowl (ECF 285), Watkins (ECF 252), Bennie Parker (ECF 284), Steele (ECF 309), Kelly Meggs (ECF 255), Connie Meggs (ECF 262), Harrelson (ECF 276), Minuta (ECF 287), James (ECF 268), Walden (ECF 290), and Isaacs (ECF 303).

- Thomas Caldwell moved to dismiss counts 1 (conspiracy), 2 (obstruction of an official proceeding), 4 (restricted grounds), and 9 (obstruction of justice) (ECF 240). This motion was joined by Caldwell (ECF 291), Crowl (ECF 285), Watkins (ECF 252), Sandra Parker (ECF 275), Bennie Parker (ECF 284), Steele (ECF 258), Kelly Meggs (ECF 255), Connie Meggs (ECF 262), Harrelson (ECF 276), Minuta (ECF 287), James (ECF 268), Walden (ECF 290), and Isaacs (ECF 303).

- Joshua James moved to dismiss count 8 (assaulting an officer) and portions of count 13 (obstruction of justice) (ECF 269). This motion was joined by Watkins (ECF 252), Kelly Meggs (ECF 255), Harrelson (ECF 276), and James (ECF 268). James relatedly moved for a bill of particulars for the same two counts (ECF 270). This motion was joined by Kelly Meggs (ECF 298) and Harrelson (ECF 276).

## FACTUAL BACKGROUND

As laid out in more detail in the indictment, at 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress, consisting of the House of Representatives and the Senate, convened in the United States Capitol building.  They assembled to debate and certify the vote of the Electoral College of the 2020 U.S. Presidential Election, which resulted in Joseph R. Biden amassing more electoral votes than President Donald J. Trump, and thus winning the election.

The defendants were all either members of the Oath Keepers or affiliates of the group. They travelled from their homes in Ohio, Florida, North Carolina, Virginia, Texas, and Alabama to Washington, D.C., and arrived specifically at the Capitol building that afternoon.

The Capitol Police had erected barriers around the Capitol, to protect the grounds, the building itself, and the people inside doing their jobs.  All of the defendants unlawfully entered the restricted grounds.

Ten of the defendants—Watkins, Crowl, Steele, Sandra Parker, Kelly Meggs, Connie Meggs, Harrelson, Hackett, Dolan, and Isaacs—formed a "stack" of people[2] who marched single file, with hands on the person in front, up the east side stairs of the Capitol and then forced their way through the Rotunda Doors, past Capitol Police officers, and into the Rotunda of the Capitol. Some of the defendants tried to push further north, towards the Senate, while others tried to push further south, towards the House.

---

[2] Three other members of the "stack" have been charged:  Charges are still pending against David Moerschel, in case 21-mj-512; Graydon Young pled guilty in this case; and Caleb Berry pled guilty in case 21-cr-460.

About a half hour later, three additional defendants—Minuta, James, and Walden[3]—pushed their way into the Capitol through the same Rotunda doors on the east side of the building. They tried to push further into the Rotunda but were repelled by police officers.  James assaulted officers trying to clear the Capitol building.

Caldwell and Bennie Parker were unlawfully on the grounds of the Capitol, and conspired with and aided abetted their co-defendants, but did not physically enter the building.

As a result of the actions of these defendants and hundreds of others, Congress was forced to halt its proceedings and evacuate.  Vice President Mike Pence, who had been presiding over Congress's Joint Session, was taken by Secret Service to a secure location within the Capitol for his own protection.  After the building was secured later that day, Congress reconvened and completed counting, certifying, and declaring the Electoral College vote result.

In the days after the defendants attacked the Capitol and delayed Congress's Joint Session, four of the defendants—Caldwell, Kelly Meggs, Harrelson, and James—deleted or attempted to delete incriminating content from their cell phones or other electronic accounts.

## ARGUMENT

### I.     LEGAL STANDARD

A defendant may move to dismiss an indictment or count prior to trial.  *See* Fed. R. Crim. P. 12(b)(3)(B).  A pretrial motion may challenge "a defect in the indictment or information" if "the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits."  *Id.*  Although a court's supervisory powers provide the authority to dismiss an

---

[3] Mark Grods, who was also a member of this group, pled guilty in case 21-cr-437.

indictment, "dismissal is granted only in unusual circumstances." *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015).

An "indictment must be viewed as a whole" and the "allegations must be accepted as true" in determining if an offense has been properly alleged. *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.*

## II. COUNTS 1 (CONSPIRACY) AND 2 (OBSTRUCTION OF AN OFFICIAL PROCEEDING) SHOULD NOT BE DISMISSED.

The defendants put forth a litany of reasons why counts 1 and 2 should be dismissed. Their primary argument focuses on the definition of "official proceeding," claiming that (a) Congress's constitutionally mandated process of counting the electoral college votes of the presidential election and certifying the next President and Vice President of the United States was somehow not an "official proceeding" and (b) the term itself is unconstitutionally vague. The defendants relatedly argue that the entire statute is unconstitutionally vague, both facially and as applied, that certain other terms ("otherwise" and "corruptly") are unconstitutionally vague, and that the rule of lenity, the novel-construction principle, and the First Amendment all demand dismissal of the claims. None of these arguments has any merit.

### A. Congress's Joint Session on January 6 Was an "Official Proceeding."

Contrary to the defendants' claims, Congress's joint session meeting on January 6, 2021, to review, count, and certify the Electoral College constitutes an "official proceeding" under the definition in Section 1515(a)(1).

1.      **Background**

The Constitution and federal statutory law require that both Houses of Congress meet to certify the results of the Electoral College vote.  Two separate provisions in the Constitution mandate that the Vice President while acting as the President of Senate "shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted."  U.S. Const. art. II, § 1, cl. 3; U.S. Const amend. XII.  Under the Electoral Act of 1887, a Joint Session of the Senate and the House of Representatives must meet at "the hour of 1 o'clock in the afternoon" on "the sixth day of January succeeding every meeting of the electors."  3 U.S.C. § 15.  Section 15 details the steps to be followed: the President of the Senate opens the votes, hands them to two tellers from each House, ensures the votes are properly counted, and then opens the floor for written objections, which must be signed "by at least one Senator and one Member of the House of Representatives."  *Id.*  The President of the Senate is empowered to "preserve order" during the Joint Session.  3 U.S.C. § 18.  Upon a properly made objection, the Senate and House of Representatives withdraw to consider the objection; each Senator and Representative "may speak to such objection . . . five minutes, and not more than once."  3 U.S.C. § 17.  The Electoral Act, which specifies where within the chamber Members of Congress are to sit, requires that the Joint Session "not be dissolved until the count of electoral votes shall be completed and the result declared."  3 U.S.C. § 16.

The defendants here are charged with violating Section 1512(c)(2) by corruptly obstructing, influencing, or impeding any official proceeding.  An "official proceeding" for purposes of Section 1512(c)(2) is defined in Section 1515 as:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a

special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;

(B) *a proceeding before the Congress*;

(C) a proceeding before a Federal Government agency which is authorized by law; or

(D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce.

18 U.S.C. § 1515(a)(1) (emphasis added).

### 2. Congress's Joint Session to certify the Electoral College vote is a "proceeding before the Congress."

Congress's meeting to certify the Electoral College vote as set out in the Constitution and federal statute is a "proceeding before the Congress" under Section 1515(a)(1)(B), and therefore an "official proceeding" for purposes of Section 1512(c)(2).  That conclusion flows principally from the obstruction statute's plain text.  Skipping past the text, the defendants argue that Congress's intent and other language in the obstruction statute import a "quasi-judicial" requirement into the term "official proceeding."  That argument is incorrect, but even if somehow valid, would still not disqualify Congress's Joint Session on January 6.

### a. Congress's Joint Session satisfies the definition of "official proceeding."

Section 1515(a)(1)(B) defines "official proceeding" as a "proceeding before the Congress." To determine the meaning of a statute, a court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (internal quotation omitted).  In ordinary parlance, a gathering of the full Congress to certify the Electoral College vote is a congressional proceeding, or "a proceeding before the Congress."  Because Section

7

1515(a)(1)(B)'s words "are unambiguous, the judicial inquiry is complete." *Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (internal quotation omitted).

Congress's Joint Session to certify the Electoral College vote constitutes a "proceeding" under any interpretation of that term. In its broadest and most "general sense," a "proceeding" refers to "[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior." *United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013) (quoting *Proceeding,* Oxford English Dictionary, *available at* http://www.oed.com). The defendants do not meaningfully contend that Congress's Joint Session to certify the Electoral College vote, which involves a detailed "series of actions" outlining how the vote is opened, counted, potentially objected to, and ultimately certified, is not a proceeding—and indeed an official proceeding— under that broad definition.

A narrower definition of the term "proceeding" would look to the "legal—rather than the lay—understanding" of the term. *Ermoian*, 752 F.3d at 1170. This narrower definition includes the "business conducted by a court or other official body; a hearing." Black's Law Dictionary, "Proceeding" (11th ed. 2019). Taken with its modifier "official," the term "proceeding" thus "connotes some type of formal hearing." *Ermoian*, 752 F.3d at 1170. Even under this narrower definition, Congress's Joint Session to certify the Electoral College vote—business conducted by an official body, in a formal session—would easily qualify.

The formality involved in the certification of the Electoral College vote places it well within the category of an official proceeding, even under the narrower legal definition of the term "proceeding." Few events are as solemn and formal as a Joint Session of the Congress. That is particularly true for Congress's certification of the Electoral College vote, which is expressly

mandated under the Constitution and federal statute. Required by law to begin at 1:00 pm on the January 6 following a presidential election, Congress's meeting to certify the Electoral College vote is both a "hearing" and "business conducted by . . . [an] official body." *See* Black's Law Dictionary, "Proceeding." The Vice President, as the President of the Senate, serves as the "presiding officer" over a proceeding that counts votes cast by Electors throughout the country in presidential election. 3 U.S.C. § 15. As in a courtroom, Members may object, which in turn causes the Senate and House of Representatives to "withdraw" to their respective chambers so each House can render "its decision" on the objection. *Id.* And just as the judge and parties occupy specific locations in a courtroom, so too do the Members within the "Hall." *See* 3 U.S.C. § 16 (President of the Senate is in the Speaker's chair; the Speaker "immediately upon his left"; the Senators "in the body of the Hall" to the right of the "presiding officer"; the Representatives "in the body of the Hall not provided for the Senators"; various other individuals "at the Clerk's desk," "in front of the Clerk's desk," or "upon each side of the Speaker's platform"). Congress's certification of the Electoral College vote, moreover, must terminate with a decision: Congress may not recess until "the count of electoral votes" is "completed," and the "result declared." *Id.* In short, Congress's Joint Session to certify the Electoral College vote is a "proceeding before the Congress" under Section 1515(a)(1)(B).

> **b.** **Section 1515(a)(1) imposes no "quasi-judicial" requirement.**

The defendants argue that the adjective "official" and the preposition "before" limit the definition of "proceeding" in Section 1515(a)(1) to only a "quasi-judicial" proceeding. But the language of Section 1515(a)(1)(B) is clear, and the defendants' proffered reasons to support their

argument—caselaw interpreting Section 1515(a)(1)(C), the title of Section 1512, the outdated Criminal Resource Manual, and legislative history—fail.

i.      **Section 1515(a)(1)(B) has no limitation on the type of congressional proceeding.**

Section 1515(a)(1)(B) defines an "official proceeding" broadly as a "proceeding before the Congress." As an initial matter, it is difficult to imagine a proceeding more "official" than a constitutionally and statutorily prescribed Joint Session of the United States Congress that convenes once every four years.

Had Congress wanted to import a definition that more closely resembled a quasi-adjudicative setting, it needed look only a few provisions away to Section 1505, which criminalizes obstruction of "the due and proper administration of the law under which any pending proceeding is being had" by a federal department or agency. And to the extent that "before" refers to "some formal convocation of the agency in which parties are directed to appear," *see United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019) (internal quotation omitted), Congress's certification of the Electoral College vote involves a "formal convocation" of Congress to assess the ballots and "declare[]" the "result" of the presidential election, 3 U.S.C. § 16.

Congress's language choice in Section 1505 undermines the defendants' argument that "a proceeding before the Congress" in Section 1515(a)(1)(B) should encompass only a congressional investigation or an impeachment. (ECF 240 at 13.) Section 1505 expressly criminalizes obstruction of "any inquiry or investigation [that] is being had by" Congress, including by congressional committees and subcommittees. 18 U.S.C. § 1505; *see United States v. Bowser*, 964 F.3d 26, 31 (D.C. Cir. 2020). If Congress wished to limit the obstruction prohibition under Section 1505 to congressional investigations, it could have done so in the text of Section 1515(a)(1)(B).

10

But it chose different terms, with different meanings. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship."). Here, Congress enacted broader language ("a proceeding before the Congress") to cover a broader range of proceedings than only the "inquir[ies] and investigation[s]" envisioned in Section 1505. That broader definition in Section 1515(a)(1)(B) includes any "proceeding" conducted by "the Congress," including its formal meeting on January 6.

The defendants' narrowed reading of "proceeding before the Congress" in Section 1515(a)(1)(B)—in essence, importing an extra-textual "quasi-judicial" requirement—would undercut the broad statute that Congress enacted. In the defendants' view, for example, an individual who threatened a Senator and a Representative with injury unless each agreed to object to the Electoral College certification—even though each Member knew that the objections were frivolous—would not amount to obstruction under the statute. Nor would it appear to cover an individual who paid one of the tellers—who are appointed by the Senate and House of Representatives to handle the Electoral College votes—to falsify or destroy votes. Indeed, other than vague references to congressional investigations,[4] the defendants' motions do not explain which congressional proceedings—short, perhaps, of impeachment—would fall within the ambit of their proffered narrowed definition. That crabbed approach fails to recognize that Congress's meeting to certify the Electoral College vote is an official proceeding that is "crucial to the conduct

---

[4] The defendants' motions do not grapple with the anomalous result that follows from their argument: an investigation by a committee—not even a full House, let alone both Houses—would qualify as a "proceeding before the Congress," but a constitutionally required Joint Session to resolve disputes over and ultimately certify the result of a presidential election would not.

of government" and therefore "entitled to go forward free of corrupting influences that not only delay [it] but increase the chances of false and unjust outcomes." *United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019). Whatever the outer limits of a "proceeding before the Congress" for purposes of the obstruction statute, Congress's Joint Session to debate and certify the Electoral College vote falls well within them.

<p style="text-align:center;">

     **ii.**   **Caselaw  interpreting  Section 1515(a)(1)(C) is inapposite.**

No court appears to have had occasion to interpret Section 1515(a)(1)(B)'s phrase "proceeding before the Congress," possibly because the phrase is unambiguous.

The defendants' reliance on cases interpreting subsection (a)(1)(C), (*see* ECF 240 at 7-10; ECF 278 at 13-14), is misplaced, because those decisions hinge on the phrase "which is authorized by law" that is absent from subsection (a)(1)(B). In *Ermoian*, the question was whether an FBI investigation was an "official proceeding" that was "authorized by law" under subsection (a)(1)(C). 752 F.3d at 1170. The same question was addressed in *United States v. Ramos*, 537 F.3d 439, 463 (5th Cir. 2008) (internal investigation conducted by Customs and Border Patrol); *United States v. Binette*, 828 F. Supp. 2d 402, 404 (D. Mass. 2011) (preliminary SEC investigation); and *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009) (review panel within the Bureau of Prisons). The defendants also rely on *United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994), but there the D.C. Circuit was interpreting the word "proceeding" in Section 1505, and it *rejected* Kelley's argument that Section 1505 applies to only adjudicatory or rule-making activities. (The D.C. Circuit did not interpret "official proceeding" in Sections 1512 or 1515 because the parties agreed that the phrase had the same meaning as "proceeding" in Section 1505. *Id.* at 1128.)

Moreover, in the context of Section 1515(a)(1)(C), courts typically analyze the degree of "formality" in a law enforcement investigation to determine if it is an "official proceeding." *See, e.g.*, *Sutherland*, 921 F.3d, at 426 (FBI investigation not an "official proceeding" because that term "implies something more formal than a mere investigation"); *Ermoian*, 752 F.3d at 1170-72 (same); *Ramos*, 537 F.3d at 463 (term "official proceeding" "contemplates a formal environment"). There should be no question that Congress's constitutionally and statutorily required Joint Session was sufficiently "formal" to qualify as an "official proceeding."

> ### iii.    The title of Section 1512 does not impose a quasi-judicial requirement on the phrase "official proceeding."

The defendants contend that Section 1512's title—"Tampering with a witness, victim, or an informant"—implies that the "official proceeding" definition in Section 1515 does not cover Congress's meeting to certify the Electoral College vote. (ECF 288 at 8.) But the title of Section 1512 says nothing about the definition of "official proceeding" in Section 1515.

First, their argument fails to heed "the wise rule" that neither "the title of a statute" nor "the heading of a section" can "limit the plain meaning of the text." *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29 (1947). A statute's title cannot mention every term in the text; to attempt to do so "would often be ungainly as well as useless." *Id.* at 528. That is precisely why "matters in the text . . . are frequently unreflected in the headings." *Id.* Simply, a section title is "not meant to take the place of the detailed provisions of the text." *Lawson v. FMR LLC*, 134 S. Ct. 1158, 1169 (2014).

Second, Section 1512(c) is not like its sister subsections (a), (b), and (d). The other three subsections contain a specific object ("another person"), and thus fit more neatly with the objects

in the Section's title ("witness, victim, or informant"). But subsection (c) is deliberately unmoored from actions against other persons. Subsection (c)(1) has as its object "records" or "documents" —*i.e.*, tangible things. *See Yates v. United States*, 135 S. Ct. 1074, 1084 n.4 (2015) (plurality opinion) (noting that in 2002 Congress added to Section 1512 a "broad ban on evidence spoliation" in subsection (c)(1), without changing the title of the overall section). And subsection (c)(2) has no object at all—the statute can be violated without attempting to affect another person or particular tangible thing. Section 1512(c)(2) is indeed broad, as it "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific" obstruction offense. *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (quoting *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014)).

In this way, Section 1512(c)'s subsections share a similarity with Federal Rule of Criminal Procedure 6(e)'s subsections. The phrase "judicial proceeding" is interpreted narrowly in Rule 6(e)(3)(F) and (G) as referring to judicial *court* proceedings, but more broadly in Rule 6(e)(3)(E)(i) because the term can include proceedings before a legislative body. *See In re House Comm. on Judiciary*, 951 F.3d 589, 596 (D.C. Cir. 2020).[5] Indeed, if the phrase "judicial proceeding" can refer to a proceeding before the Congress, surely the phrase "proceeding before the Congress" encompasses a proceeding before the Congress.

Third, the title of the legislation's section actually supports a broad interpretation of Section 1512(c). This provision was enacted in 2002 as part of the Sarbanes-Oxley Act, Pub. L. 107-204,

---

[5] At the Department of Justice's suggestion of mootness, the Supreme Court vacated this decision in *Dep't of Just. v. House Comm. on Judiciary*, No. 19-1328, 2021 WL 2742772 (U.S. July 2, 2021).

specifically Section 1102 of the law, which is titled "Tampering with a Record or Otherwise Impeding an Official Proceeding."  In other words, Congress evidenced its intent that "otherwise impeding an official proceeding" would indeed be a crime, and would be a separate crime from "tampering with a record."

Fourth, the defendants' reference to other provisions outside Section 1512, (*see* ECF 278 at 13), have even less bearing on the plain meaning of Section 1512(c)(2).  If anything, those neighboring provisions—which criminalize obstruction of other types of investigations and protect judges, jurors, and witnesses—merely underscore how robustly Congress sought to penalize obstructive conduct across a vast range of settings.  That Congress wished to penalize efforts to obstruct everything from a federal audit to a bankruptcy to an examination by an insurance official only reinforces the fact that the *acts* of obstructing, influencing, or impeding are more important than the particular type of federal hearing being obstructed.  *Williamson*, 903 F.3d at 131.

### iv.  An internal, out-of-date Department of Justice resource manual is irrelevant.

The Department of Justice's Criminal Resource Manual, (*cf.* ECF 240 at 12-14), which was published *before* Congress enacted Section 1512(c)(2) in 2002, has no bearing on the Court's analysis of the phrase "official proceeding" in that statute.

According to an archived Department of Justice website, the Criminal Resource Manual was last published in 1997.  *See* Department of Justice, United States Attorneys' Manual & Resource Manual Archives (hereinafter, "DOJ, Resource Manual Archives"), *at* https://www.justice.gov/archive/usao/usam/index.html ("1997 - Criminal Resource Manual").

The defendants cite to Section 1729 of the Manual,[6] (ECF 240 at 12), but the text of that provision proves that it was published *before* Section 1512(c) was added.  First, Section 1512(c) is not mentioned in any of the nine paragraphs.  Second, the text references a pre-2002 version of the statute; as an example, it cites extraterritorial jurisdiction as subsection (g) but in 2002 that provision was moved to subsection (h).  *See* Pub. L. 107-204, § 1102(1) (2002).

The Criminal Resource Manual was formerly appended to the Justice Manual, but it has been "superseded" and is now simply "archival material" with "no current application."  DOJ, Resource Manual Archives.  The Criminal Resource Manual was, as its name implies, merely a *resource* manual.  And even the Justice Manual contains only "*internal* DOJ guidance."  Justice Manual § 1-1.200 (emphasis added).  It creates no rights.  *United States v. Blackley*, 167 F.3d 543, 548 (D.C. Cir. 1999); *see also United States v. Caceres*, 440 U.S. 741, 754 (1979) (noting that the IRS manual does not confer any rights but is instead only an internal statement of policy).

Finally, Criminal Resource Manual Section 1729's very generalized discussion and summary of Section 1512 does not address the very specific question regarding the scope of the obstructive conduct that Congress intended to criminalize by inserting Section 1512(c)(2) in 2002.

> **v.**  **Legislative history does not support incorporating a "quasi-judicial" requirement into Section 1515(a)(1)(B).**

The defendants suggest, (ECF 240 at 12-13; ECF 278 at 5), that legislative history shows that Congress intended the obstruction statute to be interpreted narrowly because it was designed

---

[6]  Section 1729 is archived at https://www.justice.gov/archives/jm/criminal-resource-manual-1729-protection-government-processes-tampering-victims-witnesses-or.  The bottom of the page indicates that it was "updated January 17, 2020," but that appears to be the date it was archived.

simply to close a loophole.  Putting aside that the "best evidence of [a statute's purpose] is the statutory text adopted by both Houses of Congress and submitted to the President," *West Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991), the obstruction statute's legislative history in fact underscores that Congress intended "official proceeding" to reach broadly.

The defense contends that Section 1512 is "aimed at protecting the fact-finding process inherent in judicial and quasi-judicial proceedings," and cites the Victim and Witness Protection Act (VWPA) of 1982.  (ECF 240 at 7 n.3.)  But the Senate Judiciary Committee report that supported the VWPA justified the inclusion of a "broad residual clause" (in a provision that has since been amended) by noting that the "purpose of preventing an obstruction or miscarriage of justice cannot be fully carried out by a simple enumeration of the commonly prosecuted obstruction offenses.  There must also be protection against the rare type of conduct that is the product of the inventive criminal mind and which also thwarts justice."  S. Rep. 97-532, at 18 (1982).  Contrary to the defense's argument that Section 1512 ought to be construed narrowly, Congress made clear its intent that the statute ought to be construed broadly.  Who would have thought in 1982 that a mob would try to invade the Capitol to prevent Congress from physically meeting to perform its constitutional function? The defendants sought to thwart justice in an unprecedented and inventive manner: by literally driving Congress out of the chamber.  Their criminal actions fit squarely within the legislative history of the statute.

Moreover, even if the defendants were correct that the obstruction statute's application in this case was not expressly anticipated by Congress at the time of enactment, that alone "does not demonstrate ambiguity; instead, it simply demonstrates the breadth of a legislative command." *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1749 (2020) (internal quotation and alterations

omitted).  In other words, a statute's application may "reach[] beyond the principal evil legislators may have intended or expected to address."  *Id.*  (internal quotation omitted).

### c.   Congress's certification of the Electoral College vote *is* quasi-judicial.

The defendants' challenge fails even if they were correct—and they are not—that for a proceeding to constitute an "official proceeding" under the obstruction statute, that proceeding must be "quasi-judicial" or "quasi-adjudicative."  Far from a "ministerial function," (*see* ECF 240 at 14), Congress's meeting to certify the Electoral College vote has features that resemble an adjudicative proceeding.[7]  It involves the convening of a Joint Session, a deliberative body over which a government officer, the President of the Senate, "presid[es]."  3 U.S.C. § 15.  That body convenes to render judgment on whether to certify the votes cast by Electors in the presidential election.  As in an adjudicative setting, parties may lodge objections, and if any such objection is lodged, each House must consider the objection and make a "decision" whether to overrule or sustain it.  *Id.*  And just as a jury does not (barring a mistrial) recess until it has a reached a verdict, the Joint Session cannot "be dissolved" until it has "declared" a "result."  3 U.S.C. § 16.

### B.   Section 1512(c) is not unconstitutionally vague.

The defendants argue that Section 1512(c) is unconstitutionally vague, both facially and as applied to them.  They support their argument by claiming that the terms "official proceeding," "corruptly," and "otherwise" are vague.  Their arguments lack merit.

---

[7] The defense's motion appears to posit that if the Joint Session of Congress had agreed to debate the certified slates of electors, then Congress would have been engaged in a fact-finding investigation or inquiry.  (ECF 240 at 14.)  It would be illogical for the definition of "proceeding before the Congress" to be controlled by how certain Members voted during that very proceeding.

1.     **Background**

The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the government from "depriv[ing] any person of life, liberty, or property, without due process of law."  An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).

The void for vagueness doctrine is narrow.  The challenger must overcome a strong presumption that duly enacted statutes are constitutional.  *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963) ("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.").

Accordingly, the void for vagueness doctrine "does not invalidate every statute which a reviewing court believes could have been drafted with greater precision." *Rose v. Locke*, 423 U.S. 48, 49 (1975) (per curiam).  Rather, a statute is unconstitutionally vague only if it "proscribe[s] no comprehensible course of conduct at all." *United States v. Powell*, 423 U.S. 87, 92 (1975).  "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Williams*, 553 U.S. 285, 306 (2008).  This court has recognized a high bar for rendering a statute unconstitutionally vague and has advised:

> [N]o void for vagueness challenge is successful merely because a statute requires a person to conform his conduct to an imprecise but comprehensible normative

19

standard, whose satisfaction may vary depending upon whom you ask.  Instead, unconstitutional vagueness arises only if the statute specifies no standard of conduct at all.

*United States v. Gonzalez*, No. 20-cr-40 (BAH), 2020 WL 6342948, at *7 (D.D.C. Oct. 29, 2020) (internal citation and quotation omitted); *see also United States v. Harmon*, No. 19-cr-395 (BAH), 2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) (finding that the defendant did not meet the "stringent standard" to prevail on a Rule 12 void-for-vagueness motion).

The defendants further posit that the obstruction statute is so vague that it allows arbitrary enforcement, and that the government here is engaged in "specific arbitrariness."  (ECF 278 at 17-18.)  To evaluate whether a statute is so vague that it allows for arbitrary enforcement, a court looks to whether the statute has "establish[ed] minimal guidelines to govern law enforcement," *Kolender v. Lawson*, 461 U.S. 352, 358 (1983), because a statute may "require law enforcement officers to use their discretion without being unconstitutionally vague," *Agnew v. Dist. Of Columbia*, 920 F.3d 49, 55 (D.C. Cir. 2019).  The statute here easily passes muster.

The D.C. Circuit's decision in *United States v. Bronstein*, 849 F.3d 1101 (D.C. Cir. 2017), well illustrates the distinction between laws that require some degree of interpretation and laws that are unconstitutionally vague.  In *Bronstein*, the defendants were prosecuted for disturbing a Supreme Court argument under a law that prohibited, among other things, making a "harangue" or "oration" within the Supreme Court building.  *Id.* at 1104 (citing 40 U.S.C. § 6134).  The district court held that those terms were unconstitutionally vague, but the D.C. Circuit reversed.  *Id.*

As the D.C. Circuit explained, vagueness is not evaluated in a vacuum.  Instead, courts are required to exhaust all the available tools for statutory interpretation before declaring a statute void for vagueness.  "The vagueness analysis . . . turns on the tools of statutory interpretation."  *Id.*  A

20

law is not vague merely because it requires some interpretation, for "[e]ven trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid." *Id.* at 1107 (quoting *Rose*, 423 U.S. at 50). Rather, "a statute is unconstitutionally vague if, *applying the rules for interpreting legal texts*, its meaning specifies no standard of conduct at all." *Id.* (internal citation, quotation, and alterations omitted) (emphasis added). A court may strike a statute as unconstitutional only if "no construction can save" it. *Id.* at 1106 (internal citation and quotation omitted).

Thus, the challenge in *Bronstein* failed because the disputed statutory terms "harangue" and "oration" could easily be construed using ordinary tools of statutory construction. Because the court could discern a "core meaning" to the disputed terms by "[e]mploying the tools of statutory interpretation"—and because that core meaning "proscribes determinable conduct"—the statute was not unconstitutionally vague. *Id.* at 1104.

Applying these principles to the statutory interpretation arguments in Section II.A, Section 1512 is not unconstitutionally vague.

### 2.     The facial challenge to the statute should be rejected.

A statute is impermissibly vague if it either (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Section 1512(c)(2) is neither.

Relying on *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), the defendants argue that the term "corruptly" as used in Section 1512(c)(2) is unconstitutionally vague. (ECF 288 at 11-12). That claim fails for three reasons. First, the court in *Poindexter* did not hold the

21

term was vague *per se*; instead, it concluded the term was vague as applied to Poindexter's conduct of making false statements to Congress.  *See* 951 F.2d at 378-80.  Second, *Poindexter*'s analysis was confined to Section 1505, and other courts have "decline[d] to extend *Poindexter* to another section of the obstruction-of-justice statutes."  *United States v. Shotts*, 145 F.3d 1289, 1300 (11th Cir. 1998); *see also United States v. Morrison*, 98 F.3d 619, 630 (D.C. Cir. 1996) (rejecting vagueness challenge to "corruptly" under Section 1512(b) premised on rationale from *Poindexter*).  Finally, *Poindexter* predated the Supreme Court's decision in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005), in which it "did not imply the term ["corruptly"] was too vague."  *Edwards*, 869 F.3d at 502.

In *United States v. Holloway*, No. CR-F-08-224 OWW, 2009 WL 4048748, at *16 (E.D. Cal. Nov. 20, 2009),[8] a district judge rejected an identical *Poindexter*-based vagueness challenge to the word "corruptly" in Section 1512(c)(2).  The court found that *Poindexter* had been limited and statutorily remedied, and that "corruptly" was not unconstitutionally vague because it "means an act done with the intent to obstruct justice," and "applies to knowingly wrongful conduct."  *Id.*

Here, the defendants intended to obstruct, influence, or impede the congressional proceeding, and, in fact, did so.  The defendants' actions to obstruct the proceeding were not lawful acts of protest in support of a "sincerely held political belief," but rather were "wrongful, immoral, depraved, or evil" acts, *i.e.*, the unlawful and violent invasion of the Capitol and its grounds and interference with federal law enforcement deployed to protect the Capitol and its occupants on January 6.  *See United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (same); *United*

_____

[8] In *Ermoian*, 752 F.3d 1165, the Ninth Circuit reversed this decision on other grounds, namely that the FBI investigation was not an official proceeding.

*States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing"); *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (to act "corruptly" is to act "with an improper purpose and to engage in conduct knowingly and dishonestly with specific intent to subvert, impede, or obstruct") (internal quotation omitted); *United States v. Matthews*, 505 F.3d 698, 706 (7th Cir. 2007) (upholding instruction defining "corruptly" as acting "with the purpose of wrongfully impeding the due administration of justice"); Seventh Circuit Pattern Criminal Jury Instruction for § 1512 ("A person acts 'corruptly' if he or she acts with the purpose of wrongfully impeding the due administration of justice.").

The word "corruptly" therefore does not render Section 1512 unconstitutionally vague.[9]

> **3.      The as-applied challenges to the statute should be rejected.**
>
> **a.      "Official proceeding" is not unconstitutionally vague as applied to these defendants.**

The defendants put forth an argument that strains credulity: that it is unfair to prosecute them for obstruction of an official proceeding because they were not on fair notice that Congress's Joint Session on January 6 constituted an "official proceeding." (ECF 278 at 15-18.) However, the common sense reading of "a proceeding before the Congress" would include a Joint Session called to certify a presidential election result. Further, no one could think that forcing one's way into the Capitol to stop or delay Congress from meeting—and trying to intimidate Congress from formally certifying the Electoral College vote—was somehow legal. Indeed, the first group of the

---

[9] For the same reasons, the defendants' as-applied challenge based on the word "corruptly," (*see* ECF 278 at 18-20), also fails.

23

defendants to breach the Capitol gained entry only with the aid of their fellow rioters engaging in sustained violence against the Capitol Police guarding the doors. They then entered the Capitol as alarm bells rang. Finally, the defendants bragged that they "stormed" the Capitol while inside the building as well as in subsequent text messages and social media posts. They evinced no misunderstanding of their actions on January 6.

       **b.**    **"Otherwise" is not unconstitutionally vague as applied to these defendants.**

The defendants claim that that the word "otherwise" in Section 1512(c) is vague as it applies to them. (ECF 288 at 8-10.) They are wrong.

The Eight Circuit rejected a similar challenge, interpreting "otherwise" in Section 1512(c)(2) to mean that the statute provides fair notice to defendants, "in plain language," that obstruction can occur differently from Section 1512(c)(1)—that is, one can obstruct a proceeding without relating to a record, document, or object. *Petruk*, 781 F.3d at 446. The Seventh Circuit similarly held that Section 1512(c)(2) "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific offense like document destruction, which is listed in (c)(1)." *Volpendesto*, 746 F.3d at 286 (internal quotation omitted).

The word "otherwise" has its common definition—differently from others. *See* Webster's New World College Dictionary 1021 (4th ed. 2007) (defining "otherwise" as "in another manner; differently"). Here, the defendants were on fair notice, including from these judicial interpretations and dictionary definitions, that one could obstruct an official proceeding in ways other than with respect to a record, document, or object.

The defendants get no support from *Yates*, 574 U.S. 528. (*Cf.* ECF 288 at 9.) The plurality opinion relied on the canon of *ejusdem generis* to interpret as alike "general words" that follow

"specific words in a statutory enumeration." *Id.* at 545.  But whereas the language in Section 1519 was part of a single paragraph, the language in Section 1512(c)(2) is contained in a completely separate subsection from (c)(1).  *Cf. Begay v. United States*, 553 U.S. 137, 144 (2008) (holding that a statute's use of "or otherwise" in a sentence after a list of examples requires something similar to the examples), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015).  Indeed, the defendants identify no case in which a court has applied the *ejusdem generis* canon in the novel manner—from one subsection to another—they propose.

As noted above, when Congress passed the Sarbanes-Oxley Act, it titled the section that created Section 1512(c) as "Tampering with a Record *or* Otherwise Impeding an Official Proceeding," suggesting that (1) "tampering with a record" be a separate provision from (2) "otherwise impeding an official proceeding."  Pub. L. 107-204, § 1102 (2002) (emphasis added).

## C.     The rule of lenity does not apply.

Likewise, the defendants' rule of lenity argument fails, as it is only a canon of "last resort." *Guedes v. Bureau of Alcohol, Tobacco & Firearms*, 920 F.3d 1, 27-29 (D.C. Cir. 2019).  The rule of lenity "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (internal citation and quotation omitted).  There is no grievous ambiguity here.

Here, the defendants took intentional and unlawful action to disrupt a Joint Session of Congress.  Section 1512(c)(2) criminalizes "corruptly" obstructing an "official proceeding." Section 1515(a)(1)(B) defines that term to include a "proceeding before the Congress," which, as discussed above, encompasses Congress's certification of the Electoral College vote.

25

Unlike some statutes, which may require complicated compliance regimes, the defendants could have easily complied with the law on January 6. They could have voiced their support for the candidate or cause in constitutionally protected free speech outside of the Capitol grounds. Or they could have applied political pressure on enough legislators to object and not vote to certify in favor of the eventual winner. No guess work was needed to comply with the law.

### D.   The novel-construction principle does not apply

The defendants argue that because no court has construed Section 1512(c)(2) to apply a "novel construction" of the statute against them violates the Due Process Clause of the Fifth Amendment. (ECF 278 at 21-23.) This argument is meritless.

"[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997). Due process requires that a statute— or judicial interpretations of that statute—provide a "fair and clear" warning of the conduct that is criminalized. *Id.* at 271. Thus, a judge who sexually assaulted women in his chambers could be convicted of violating 18 U.S.C. § 242 by acting under the color of law to deprive the victims of their constitutional rights and privileges, even though the statutory language was capacious and the government had not previously prosecuted state officials for similar acts. *Id.* at 272. Because "[t]he easiest cases don't even arise," there is no constitutional requirement that a "fundamentally similar" prosecution must have previously been brought. *Id.* at 270, 271 (internal quotation omitted). In other words, the Constitution surely allows a first-of-its-kind prosecution.

The defendants make much of the argument that the government has not previously prosecuted a person for obstructing a congressional proceeding that was not part of Congress's

investigative power.  (ECF 278 at 17.)  But just because these are the first prosecutions does not make them novel—the attack on the Capitol on January 6 was the first time the Capitol had been breached since 1812 and the first time it was breached in a non-military conflict.  Simply because Section 1512(c)(2) has never been applied to the unprecedented and brazen attack that the defendants and others carried out on the Capitol and law enforcement officers guarding the building does not mean that the defendants did not have a "fair and clear" warning that impeding or obstructing congressional proceedings encompassed their conduct.  *Lanier*, 520 U.S. at 271.

### E.    The First Amendment does not protect the defendants' actions.

The defendants argue that forcing their way into the Capitol building on January 6 was simply an exercise of their First Amendment rights by petitioning the government for a redress of their grievances—and thus that Section 1512(c)(2) cannot be constitutionally applied to them. (ECF 278 at 23.)  This argument is specious.

Notwithstanding the defendants' efforts to characterize their conduct as mere "political demonstration and protest," (ECF 278 at 24), the defendants intentionally invaded the Capitol grounds and then the Capitol building itself.  Many of them impeded or assaulted law enforcement while inside.  These unlawful actions by the defendants plainly distinguish their conduct from lawful assembly.

In *Texas v. Johnson*, 491 U.S. 397, 403, (1989), the Supreme Court explained the procedure for determining whether a defendant may invoke the First Amendment to challenge a criminal charge.  First, the court must determine whether the defendants' conduct "constituted expressive conduct."  *Id.*  If the conduct was not expressive, the challenge fails.  *Id.*  Second, if the conduct was expressive, the court must determine if the statute is "related to the suppression of free

27

expression." *Id.*  If the statute is not related to the suppression of free expression, the court applies the "less stringent standard" for noncommunicative conduct laid out in *United States v. O'Brien*, 391 U.S. 367, 377 (1968). *Johnson*, 491 U.S. at 403.  If the statute *is* related to the suppression of free expression, the court must apply a "more demanding standard" to determine if the government's interest justifies imposition of criminal liability.  *Id.*

Under *O'Brien*, the statute is constitutional only if (1) "it is within the constitutional power of the government"; (2) "it furthers an important or substantial governmental interest"; (3) "the governmental interest is unrelated to the suppression of free expression"; and (4) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."  391 U.S. at 377.  The defendants argue that the government's application here violates the third and fourth *O'Brien* factors.  (ECF 278 at 25.)

The defendants' conduct was not "expressive," and thus their challenge fails before reaching the *O'Brien* factors.  Whatever they were doing at the Ellipse in the morning, or while walking to the Capitol midday, it is uncontroverted that once they entered the Capitol grounds it was their presence, not their "expressive conduct" (or their speech) that was unlawful.  As an example, say a person, believing an ongoing trial to be unjust, breaks into a courtroom in order to delay a judge from presiding over the trial, and accomplishes that delay by both his presence in the courtroom and his shouting at the judge.  The First Amendment does not protect the person from an obstruction of justice charge; his "expressive conduct" of shouting at the judge is not the conduct that the statute criminalizes.  To the contrary, it is the person's actus reus (presence and physical disturbance in the courtroom) coupled with his mens rea (intending to prevent the trial from proceeding) that violates the obstruction statute.  The same is true here.

28

But even if the *O'Brien* factors apply, the defendants' argument still fails. Here, the government interest in protecting the integrity and continuity of congressional proceedings is unrelated to any incidental impact that the application of the law may have on the ability to petition government for a redress of grievances. Second, the statute goes no further than what is "essential" to prevent the obstruction of official proceedings of Congress. The Supreme Court has upheld restrictions on demonstrations in Washington, D.C., with far less at stake than the integrity of the U.S. Presidential Election. *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 299 (1984) (upholding a ban on overnight camping on the National Mall and finding a "substantial Government interest in conserving park property, an interest that is plainly served by, and requires for its implementation, measures such as the proscription of sleeping that are designed to limit the wear and tear on park properties").

## III.     COUNT 3 (DESTRUCTION OF PROPERTY) IS PROPERLY PLED.

There is no merit to the defense's argument that the indictment's failure to identify "what property was damaged and by whom" violates Federal Rule of Criminal Procedure 7(c). (ECF 278 at 3.)

Rule 7(c)(1) states in relevant part that "[t]he indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and that "[f]or each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."

To be sufficient under the Constitution, an indictment "need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." *United States v. Verrusio*, 762 F.3d 1,

13 (D.C. Cir. 2014).  "[B]y using the statutory language and specifying the time and place of the offense," an indictment provides both "fair notice" and protection against future prosecution. *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018); *see also United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985) ("The indictment should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied.").

The indictment alleges that the defendants were part of a conspiracy, and their membership in that conspiracy gives rise to vicarious liability for offenses committed by other conspirators. Additionally, the indictment plainly alleges that the defendants "attempted to, and did, willfully injure and commit depredation against property of the United States, that is, the United States Capitol building, thereby causing or attempting to cause damage that exceeded $1,000, and did aid and abet others known and unknown to do so."  Indictment ¶ 168.  And the indictment specifies the property that was damaged:  paragraphs 134 to 137 describe damage to the Capitol's exterior east side doors outside the Rotunda.  Those allegations suffice to inform the defendants of the alleged property destruction crime and to enable them to defend against it.  Nothing more— including further description of the type and nature of evidence supporting those allegations—is required at this stage in the proceedings.

## IV.    COUNT 4 (RESTRICTED GROUNDS) CONTAINS NO DEFECTS.

The indictment charges the defendants in count 4 with violating 18 U.S.C. § 1752(a) by being unlawfully present on restricted grounds.  The defendants challenge count 4 in three respects: (1) the Secret Service was required to establish the restricted grounds; (2) the Capitol grounds are distinct from the Capitol building for purposes of Section 1752; and (3) the Secret Service

protectee—whose presence makes certain grounds restricted—had to be in the same place at the same time as the defendants. They are wrong on each score.

Like with their arguments challenging Section 1512(c)(2), the defendants also argue that the statute is unconstitutionally vague and that the rule of lenity and the novel-construction principle apply. None of these arguments has merit.

### A. The identity of the law enforcement agency that erected the barricades around the restricted area is irrelevant.

The defendants argue that the indictment is flawed because it does not allege that the Secret Service itself designated the "restricted area" around the Capitol on January 6. (ECF 278 at 26; ECF 240 at 20.) But their argument misconstrues the plain language of Section 1752. The statute reads:

> (a) Whoever—
> (1) knowingly enters or remains in any restricted building or grounds without lawful authority to do so;
> (c) In this section—
> (1) [T]he term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area—
> (B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting[.]

18 U.S.C. § 1752. The statute "prohibits persons from knowingly entering without lawful authority to do so in any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting." *Wilson v. DNC Servs. Corp.*, 417 F. Supp. 3d 86, 98 (D.D.C. 2019), *aff'd*, 831 F. App'x 513 (D.C. Cir. 2020).

To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin*, 568 U.S. at 513 (quoting *Moskal*, 498 U.S. at 108); *see Pub. Investors Arbitration Bar Ass'n v. U.S. S.E.C.*, 930 F. Supp. 2d 55 (D.D.C. 2013) ("[A]

31

reviewing court must accord first priority in statutory interpretation to the plain meaning of the provision in question."). Where, as here, the statute in question's words "are unambiguous, the judicial inquiry is complete." *Babb*, 140 S. Ct. at 1177 (internal quotation marks omitted).

Section 1752's text is clear. In subsection (a)(1) it proscribes knowingly entering or remaining in "any restricted building or grounds" without lawful authority, and then in subsection (c)(1) it provides three definitions for the term "restricted buildings and grounds." Relevant here, Section 1752(c)(1)(B) defines "restricted buildings and grounds" as "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting."

The term "other person protected by the Secret Service" is defined in Section 1752(c)(2) as a person whom the Secret Service is authorized to protect under Section 3056. Section 3056(a)(1), in turn, provides that the Secret Service is authorized to protect the Vice President.

The indictment alleges that, on January 6, 2021, Vice President Pence was present inside the Capitol building. Indictment ¶¶ 4, 6. It further alleges that the Capitol was secured by permanent and temporary barriers, *id*. ¶ 5, and that the defendants unlawfully entered the restricted Capitol grounds, *id*. ¶¶ 108, 125. In count 4, the indictment alleges that the defendants "did knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off, or otherwise restricted area within the United States Capitol and its grounds, where the Vice President and Vice President-elect were temporarily visiting, without lawful authority to do so." *Id.* ¶ 170. In short, the allegations closely track the statutory language.

The defendants urge the Court to import an extra-textual requirement that the Secret Service be the entity to designate the restricted area. That arguments fails on the merits for multiple

32

reasons.  Indeed, just a few weeks ago, Judge McFadden rejected this precise argument, denying a Rule 12 motion to dismiss and holding that the identity of the law enforcement agency that erected the barricades on the Capitol grounds was irrelevant.  *United States v. Griffin*, No. 1:21-cr-00092-TNM, 2021 WL 2778557, at *1 (D.D.C. July 2, 2021).

First, Section 1752 is not directed at the Secret Service; "it is not a regulatory statute."  *Id.* at *4; *see also* S. Rep. 91-1252 (1970) (noting that the statute is designed to ensure the protection of the President and the office of the Presidency).

Second, the statutory history—as distinct from the legislative history—in fact undercuts the defendants' argument. *Griffin*, 2021 WL 2778557, at *4.  In 1970, Congress enacted Section 1752 to include subsection (d), which gave authority to the Department of Treasury, which then oversaw the Secret Service, to "prescribe regulations governing ingress or egress to such buildings and grounds and to posted, cordoned off, or otherwise restricted areas where the President is or will be temporarily visiting."  Pub. L. 91-644, Title V, § 18, 84 Stat. 1891-92 (Jan. 2, 1971). Congress subsequently struck subsection (d) and did not replace it with language limiting the law enforcement agencies allowed to designate a restricted area.  Pub. L. 109-177, Title VI, § 602, 120 Stat. 192 (Mar. 9, 2006).  Congress was clearly aware that the prohibitions in Section 1752 could turn on decisions made by the Secret Service, but chose not to include that in the revised statute. *See Griffin*, 2021 WL 2778557, at *5 ("[T]he Court cannot agree with Griffin that woven through these increasingly broad versions of the statute was a latent limitation that only the Secret Service could effectively post, cordon off, or restrict an area.").

The defendants' reliance on statutory purpose and legislative history suffers a bigger flaw: it focuses outside the text when the text itself is clear.  Such an inquiry is permissible only where

literal application of statutory language either results in an outcome that can truly be characterized as absurd, or that produces an outcome that is demonstrably at odds with clearly expressed congressional intent.  *See United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543 (1940).  The plain meaning of the statute does not result in an outcome that can be characterized as absurd.  The example cited by the defendants regarding the Postal Service extending the restricted area of the White House to the E. Barrett Prettyman U.S. Courthouse, (*see* ECF 278 at 27), falls outside the conduct criminalized by the statute.  The statute sets three clear limitations on where restricted areas may be established:

> (A) a posted, cordoned off, or otherwise restricted area of the White House or its grounds, or the Vice President's official residence or its grounds;

> (B) a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; and

> (C) a posted, cordoned off, or otherwise restricted area of a building or grounds so restricted in conjunction with an event designated as a special event of national significance.

18 U.S.C. § 1752(c)(1).  The statute does not criminalize an individual entering an area in a building or grounds separate from where a Secret Service protectee is or will be present, or an event of national significance is taking place.  In short, the plain meaning of the statute does not result in an "absurd" outcome.

Nor is the literal application of the statute at odds with congressional intent.  The language of the statute is the best evidence of congressional intent. *W. Va. Univ. Hosps.*, 499 U.S. at 84.  As noted above, this statute was intended to ensure the safety of Secret Service protectees.  If Congress intended to give Secret Service sole authority to designate a restricted area, it could have written that into the statute or amended the statute to reflect that intent.  It did not.

The defendants' reliance on *United States v. Bursey*, 416 F.3d 301, 306-07 (4th Cir. 2005), is misplaced.  There, the Fourth Circuit affirmed the defendant's conviction under Section 1752 for entering an airport hangar that was restricted by the Secret Service working in tandem with local law enforcement.  416 F.3d at 309.  Responding to Bursey's claim that he was not advised the hangar was a federally restricted zone designated by the Secret Service, the court found that the lower court's factual findings belied Bursey's claim because he had admitted that he was aware that the Secret Service coordinated security for the President there.  *Id.*  The court did not hold that the Secret Service is the only law enforcement agency that may designate a restricted area.

### B.      The Capitol grounds includes the Capitol building.

Defendant Caldwell argues that this count cannot apply to him because he was on the Capitol *grounds* while Vice President Pence was in the Capitol *building*.  (ECF 240 at 19.)  His argument appears to be that Vice President Pence was not on the grounds of the Capitol.  But this argument is baseless.  The Capitol grounds *include* the Capitol building.  As his own motion appears to concede, the Capitol building sits *on* (and therefore within) the Capitol grounds.  *Id.*

### C.      There is no contemporaneity requirement in the statute.

Defendant Caldwell also appears to argue that this count fails because he and the Vice President were not *contemporaneously* in the same place.  *Id*.  But this argument fails on both the law and the facts.

On the law, Section 1752(a) does not require contemporaneity.  A restricted area is one in which a Secret Service protectee is currently—or in the future will be—visiting.  18 U.S.C. § 1752(c)(1)(B).  In other words, the statute does not require the protectee to be in the area at the

same time that the defendant is in the area.  It is sufficient that the protectee *will be* in the area, and that the area is cordoned off.

And on the facts, Caldwell was alleged to be in the restricted area of the Capitol grounds at the same time that the Vice President was inside the Capitol itself.

> ### D.   The statute is not unconstitutionally vague as applied to these defendants.

The defendants contend that the straightforward interpretation described above is unconstitutionally vague as applied to them.  (ECF 278 at 29.)  A statute is vague where it (1) fails to give ordinary people fair notice of the conduct it punishes or (2) is so standardless that it invites arbitrary enforcement.  *Johnson*, 576 U.S. 591.  Neither applies to Section 1752.

As described above, Section 1752 prohibits the defendants from knowingly engaging in certain conduct in "any posted, cordoned off, or otherwise restricted area, of … grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." Because the area on the Capitol grounds was cordoned off by plainly visible metal barricades as well as a row of Capitol Police officers, the defendants were on notice that the area surrounding the Capitol was restricted.  The defendants had fair notice that their entry onto the Capitol grounds and into the building itself was unlawful.

Ironically, the government's evidence is that several of the defendants in this case— including specifically Harrelson and Caldwell, who each filed one of the motions—were on actual notice of the barricades.  A photograph recovered from Harrelson's own phone shows that Harrelson and several other defendants were present on January 5 to observe the barricades on the east side of the Capitol (before they were overrun by the mob on January 6).  Similarly, Caldwell

36

admitted in a message sent after the attack that "we climbed the steps *after breaking 2 rows of barricades*." (ECF No. 66 at 9 (emphasis added).)

### E.    The rule of lenity does not apply.

As described in Section II.C, the rule of lenity applies only if there is grievous ambiguity or uncertainty in the statute. There is no ambiguity here. As noted above, Section 1752 prohibits certain knowing conduct within a restricted zone established to ensure the protection of certain individuals, such as the Vice President, or certain events of national significance.

### F.    The novel-construction principle does not apply.

As described in Section II.D, the novel-construction principle has no applicability to a plain and clear statute. And the defendants' argument here is rooted in their faulty premise that the statute requires that the Secret Service designate the restricted area. Because Section 1752's plain language includes no such requirement—and encompasses the precise conduct that the defendants are alleged to have committed—the novel-construction principle has no application here.

## V.    COUNT 8 (ASSAULTING AN OFFICER) IS PROPERLY PLED, AND A BILL OF PARTICULARS IS NOT WARRANTED.

Defendant James argues that Count 8 should be dismissed because it does not charge him with sufficient specificity. (ECF 269.) In the alternative, he moves for a bill of particulars. (ECF 270.) Because his arguments overlap, the government addresses them together. Neither has merit.

Whether a bill of particulars is appropriate lies within this Court's "sound discretion." *United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006) (quotation omitted). The purpose of a bill of particulars is "to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Butler*, 822 F.2d 1191, 1193

(D.C. Cir. 1987).  A bill of particulars should thus be granted only when "necessary to prevent unfair surprise at trial."  *United States v. Hsin-Yung*, 97 F. Supp. 2d 24, 36-37 (D.D.C. 2000) (internal quotation omitted).  If an indictment "is sufficiently specific, or if the requested information is available in some other form, then a bill of particulars is not required."  *Butler*, 822 F.2d at 1193; *see United States v. Lorenzana-Cordon*, 130 F. Supp. 3d 172, 179 (D.D.C. 2015) (denying motion for bill of particulars and noting that the government had provided extensive discovery that "allows Defendants to adequately prepare for trial").

As described in Section III, Rule 7(c)(1) requires only that the indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and that it "give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."  Here, count 8 alleges that James

> did forcibly assault, resist, oppose, impede, intimidate, and interfere with an officer with the District of Columbia Metropolitan Police Department who was assisting officers and employees of the United States while such persons were engaged in and on account of the performance of official duties, and where the acts in violation of this section involved physical contact with the victim and the intent to commit another felony, namely, Count Two, charging Obstruction of an Official Proceeding and Aiding and Abetting, in violation of Title 18, United States Code, Sections 1512(c)(2), 2.

Indictment ¶ 178.  The indictment further cross-references paragraphs 156 and 158, which themselves describe the specific time (3:17 p.m.), place (in the area between the lobby and Rotunda), and conduct ("JAMES yanked and pushed several of the riot officers out of the way").

The only specificity James appears to be seeking—or that he is complaining is lacking— is the name of the officer he is alleged to have assaulted.  (ECF 269 at 4-5; ECF 270 at 3.)  But the name of the officer is not required under either Rule 7 or Rule 12.

An indictment need not provide the name of the victim. *See United States v. Miller*, 883 F.3d 998, 1003 (7th Cir. 2018) ("The lack of specific identification of the victims does not make the indictment insufficient."). For example, in *United States v. Melendez-Colon*, 417 Fed. App'x 320, 321-322 (4th Cir. 2011) (per curiam) (unpublished), the Fourth Circuit held that an indictment charging two counts of assault was not defective for "fail[ing] to name the victim in either count," and "that the indictment's failure to name the victims will not preclude [the defendant] from raising double jeopardy as a defense to any future prosecutions for the assaults."

In *United States v. Figueroa*, No. 14-00672 (SRC), 2021 WL 1661202, at *9 (D.N.J. 2021), another prosecution under Section 111(a)(1), the court rejected a similar Rule 12 argument. The indictment was sufficiently specific by identifying the assault victim as "an employee of the United States, namely Victim 2, an employee of the United States National Park Service." *Id.* Similarly, the indictment here identifies the victim as "an officer with the District of Columbia Metropolitan Police Department." Indictment ¶ 178. Such identification sufficiently meets the low threshold required for an indictment and puts the defendant on fair notice as to the nature of the charges.

James relies in part on *United States v. Tomasetta*, 429 F.2d 978, 980 (1st Cir. 1970), in his request for a bill of particulars identifying the victim. (ECF 269 at 4-5.) However, the First Circuit "stress[ed] that no one factor [was] determinative," and that "failure to name the victim . . . might not alone have led to [dismissal]." *Tomasetta*, 429 F.2d at 980. In a later case, the First Circuit clarified that

> *Tomasetta*, did not, however, establish an inflexible floor of information required for a valid indictment. On the contrary we stated therein that "arbitrary rules as to the necessity . . . of a given averment have no place in the analysis, as the question is whether the indictment as a whole conveys sufficient information to properly identify" the allegedly unlawful conduct.

39

*United States v. Hallock*, 941 F.2d 36, 40 (1st Cir. 1991) (quoting *Tomasetta*, 429 F.2d at 979).

Other courts have upheld indictments that identify victims in generic terms, despite defense challenges invoking *Tomasetta*.  For example, in *United States v. Hill*, No. 1:09-cr-199-TWT, 2010 WL 128314, at *6 (N.D. Ga. Jan. 13, 2010), the court rejected the defendant's "argument that the failure to name the alleged victim constitutes a fatal deficiency in the indictment."  The court explained that the *Tomasetta* court dismissed the indictment "only under the specific circumstances presented and the overall vagueness of the charge in the indictment with respect to the exact location and nature of the offense alleged."  *Id.*  The court reasoned that the indictment was "not nearly so vague as . . . *Tomasetta*," because "despite the Government's failure to name the victim in the indictment, the allegations set forth in Count One are quite specific as to the time and place and nature of the alleged offense, far more so than in *Tomasetta*."  *Id.* at *7.

Count 8 need not be more specific, for either Rule 12 or Rule 7 purposes.  "[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (internal quotation omitted).  Count 8 provides the time and location of the acts alleged, identifies the victim as "an officer with the District of Columbia Metropolitan Police Department," provides that the alleged acts "involved physical contact with the victim," and provides that the acts were committed with intent to commit another charged felony.  Indictment ¶¶ 156, 178.

Finally, James claims that he needs to know the identity of the victim to "ensur[e] that all relevant body camera footage is provided, [to] review[] all relevant statements made by or about the officer in question, etc."  (ECF 269 at 4-5.)  He thus "seeks to use the victim's identity to conduct discovery, which is not the purpose of a bill of particulars."  *United States v. Kelly*, No.

19-CR-286 (AMD), 2020 WL 473613, at *2 (E.D.N.Y. Jan. 29, 2020). Regardless, the government has already produced in discovery multiple body-worn camera video files, as well as video captured by Minuta on James's phone, showing James's assault on the police officers trying to prevent his entry into the Rotunda.

The court should therefore deny James's motions to dismiss or for a bill of particulars.

## VI. THE OBSTRUCTION OF JUSTICE COUNTS ARE PROPERLY PLED, AND A BILL OF PARTICULARS IS NOT WARRANTED.

The grand jury indicted four defendants (Caldwell, Kelly Meggs, Harrelson, and James) with violating Section 1512(c)(1) by tampering with a document or proceeding. Specifically, in counts 9, 11, 12, and 13, the indictment charges that these four defendants did "corruptly alter, destroy, mutilate, and conceal a record, document, and other object with the intent to impair its integrity and availability for use in an official proceeding, that is, the FBI investigation and the grand jury investigation into the attack on the Capitol on January 6, 2021."

### A. The Obstruction of Justice Counts Are Properly Pled.

Rule 7(c)(1) specifically provides that a count may allege that a defendant committed an offense "by one or more specified means." Where a statute may be violated by multiple means, the government may charge the statutory alternatives in the conjunctive (using the word "and"). *Turner v. United States*, 396 U.S. 398, 420 (1970). "[T]he government is entitled to prove criminal acts in the disjunctive, notwithstanding that the indictment charges them in the conjunctive." *United States v. Coughlin*, 610 F.3d 89, 106 (D.C. Cir. 2010). In other words, when a statute provides (and an indictment alleges) different means of committing an offense, then the indictment is not duplicitous, and the government is only required to prove one of the several alternatives.

41

The defendants' argument here is foreclosed by *United States v. Hubbell*, 177 F.3d 11, 14 (D.C. Cir. 1999), in which the court explained that "[d]uplicity is the joining in a single count of two or more distinct and separate offenses."  The D.C. Circuit rejected a duplicity challenge and held that "when two or more acts would constitute an offense standing alone, those acts may instead be charged in a single count if those acts could be characterized as part of a single, continuing scheme."  *Id.* (citing *United States v. Shorter*, 809 F.2d 54, 56 (D.C. Cir. 1987)).  In other words, if a defendant destroys evidence to make it unavailable to *both* the FBI and the grand jury, it is one scheme, and the defendant can be charged in a single count.

Regardless, even if the counts *did* present a duplicity problem, it could be easily remedied with a special verdict form.  *See, e.g.*, *United States v. Palmer*, 85 F. Supp. 3d 284, 291 (D.D.C. 2015) ("[T]he Court found that the Government could proceed with these [potentially duplicitous] charges by employing use of a special verdict form to ensure that the jury considered the different alternatives separately.").

In this situation, the indictment alleges that the defendants violated Section 1512(c)(1) by obstructing the FBI investigation *and/or* the grand jury investigation.  At trial, the government intends to proceed only on the theory of obstruction of the grand jury investigation.  The remainder of the defendants' arguments on this point are therefore moot.

### B.      A Bill of Particulars Is Not Warranted.

The defendants seek a bill of particulars for the obstruction of justice counts, claiming that the government must identify the particular grand jury proceeding that the defendants are alleged to have obstructed.  (ECF 270 at 5.)  Their motion has no merit.

The government has previously explained in Section V the reasons why a bill of particulars is disfavored, especially as a "discovery tool."  The same holds true here.  The defendants' specific motion fails for two reasons.

First, an indictment alleging obstruction of justice is not required to identify the official proceeding at the level of granularity that the defendants request.  For example, in *United States v. Peterson*, No. 7:07-cr-34-HL, 2008 WL 4224813, at *3-4 (M.D. Ga. Sept. 5, 2008), the court denied a motion to dismiss an indictment alleging a violation of Section 1512(c)(2) on the grounds that it "[did] not identify the particular grand jury that was obstructed."  The court held that the indictment adequately apprised the defendant of the specific grand jury proceeding, by listing the month it began, the federal district in which it sat, and the subject matter it was investigating.  *Id.* at *4.

Here, the indictment provides notice of the same basic facts: the general time frame (January 2021), the federal district (the United States District Court for the District of Columbia), and the subject matter (the attack on the Capitol).  Indictment ¶ 180.  Nothing more is necessary.  Indeed, because Section 1512(f)(1) specifically provides that an "official proceeding need not be pending or about to be instituted at the time of the offense," it is unclear why the defendants— especially pre-trial—would need to know any additional information about the granularity of the grand jury's proceedings.

Second, the defendants' reliance on *United States v. Aguilar*, 515 U.S. 593 (1995), and *Arthur Andersen*, 544 U.S. 696, (ECF 270 at 3-4), is misplaced.  At this stage, the defendants' argument "conflates pleading with proof."  *United States v. Ring*, 628 F. Supp. 2d 195, 223 (D.D.C. 2009) (internal quotation omitted).  In *Ring*, the court denied the defendant's motion to dismiss,

rejecting the defendant's argument that an obstruction of justice count was invalid because it "fail[ed] to allege the requisite 'nexus' between the statements to private counsel and their known, obstructive effect on a federal proceeding." *Id.* "Neither *Aguilar* nor *Arthur Anderson* involved the sufficiency of the indictment—the issue in both cases was the sufficiency of the evidence following a conviction." *Id.* (internal citation and quotation omitted).

In order to secure a conviction under Section 1512, the government will need to prove at trial that the defendants' obstructive conduct had a "nexus" to the official proceeding. *Id.* However, at the pleading stage, the government is not required to provide details that prove the nexus requirement. Rather, "it is enough that the indictment alleges the elements of obstructing justice as set out under § 1512(c)(2)." *Id.* at 224. Thus, the defendants' motion for a bill of particulars identifying details of the grand jury they are charged with obstructing essentially amounts to an improper request for the government to elaborate on how it intends to prove the nexus between their conduct and the grand jury. *See United States v. Han*, 280 F. Supp. 3d 144, 149 (D.D.C. 2017) ("[A] bill of particulars is meant to allow a defendant to properly prepare for trial, not provide a method to force the prosecution to connect every dot in its case.").

For these reasons, the defendants' motion for a bill of particulars for the obstruction of justice counts should be denied.

## CONCLUSION

The government respectfully submits that the Court should not dismiss any of the counts in the Fourth Superseding Indictment, and should not require a bill of particulars for any counts.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY
D.C. Bar No. 415793

By:

Jeffrey S. Nestler
Assistant United States Attorney
D.C. Bar No. 978296
Ahmed M. Baset
Troy A. Edwards, Jr.
Louis Manzo
Kathryn Rakoczy
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
jeffrey.nestler@usdoj.gov
202-252-7277

*/s/ Alexandra Hughes*
Alexandra Hughes
Justin Sher
Trial Attorneys
National Security Division
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

45