# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v.   : | Case No. 21-cr-78 (RCL) |
| : | |
| **JOHN EARLE SULLIVAN,** : | |
| : | |
| **Defendant.** : | |

## GOVERNMENT'S 404(b) NOTICE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Federal Rule of Evidence 404(b) Notice regarding the admissibility of Defendant John Sullivan's prior acts of protesting and rioting for the proposition that he is a professional protestor whose presence at the Capitol on January 6, 2021 was no mere accident or part of a journalistic exercise, but was in line with his consistent motivation to trigger violence and property destruction during civil unrest. Defendant Sullivan is charged with crimes related to his conduct at the Capitol on January 6, 2021. As detailed herein, Defendant Sullivan's prior acts are probative in establishing Sullivan's motive, intent, knowledge, and absence of mistake or accident.

If not used in its case-in-chief, the government intends to use the 404(b) evidence as impeachment or rebuttal evidence should defense present a case. In the event the government is precluded from using the 404(b) evidence in its case-in-chief, the government would seek to use it as impeachment or rebuttal evidence.

1

I.      PROCEDURAL HISTORY

On November 10, 2021, a grand jury charged Defendant Sullivan with Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2), and 2; Civil Disorder in violation of U.S.C. § 231(a)(3), and 2; Entering and Remaining in a Restricted Building and Grounds with a dangerous weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A); Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a dangerous weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A); Unlawful Possession of a Dangerous Weapon on Capitol Grounds or Buildings, in violations of 40 U.S.C. § 5104(e)(1)(A)(i); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G); False Statement or Representation to an Agency of the United States, in violations of 18 U.S.C. § 1001(a)(2); and Aiding and Abetting, in violation of 18 U.S.C. § 2.

The case is scheduled for jury trial to commence on October 25, 2023. Judge Emmet Sullivan ordered the government to file notice of Rule 404(b) evidence by May 5, 2023. See ECF No.83 at 1. Defense has been provided the material referenced in this notice during discovery.

II.     DEFENDANT'S CONDUCT ON JANUARY 6, 2021

John Sullivan traveled from Utah to Washington, D.C., to attend and film varying rallies on the 5th and 6th. On January 6th, Sullivan attended the "Stop the Steal" rally on January 6, 2021. Afterwards, Sullivan joined rioters at the U.S. Capitol grounds where he filmed a crowd pushing through several police barriers on the west side of the Capitol. After the crowd broke through the last barricade. As Sullivan and the others approach the Capitol Building, Sullivan can be heard in his video excitedly saying at various points: "There are so many people. Let's go. This shit is ours!

2

Fuck yeah," "We accomplished this shit. We did this together. Fuck yeah! We are all a part of this history," and "Let's burn this shit down."

Sullivan entered the Capitol via a broken Senate Wing Door. Once inside the Capitol Building, Sullivan roamed the building with other individuals who unlawfully entered. During one of his interactions with others, Sullivan can be heard in the video saying, "We gotta get this shit burned," "it's our house motherfuckers," and "we are getting this shit." Sullivan ignored law enforcements commands to leave and told the officers to stand down, so they would not get hurt. Sullivan encouraged other rioters, explaining he was "ready" because he had "been in so many riots."

Sullivan filmed the crowds trying to break open doors to the House Chamber and then at the Speaker's Lobby. At both locations, Sullivan informed other members of the crowd he had a knife which allowed him to cut to the front of the crowd. At the front of the Speaker's Lobby crowd, Sullivan filmed the crowd trying to break down the doors' glass windows. Sullivan can be heard telling law enforcement to "go home" while encouraging those attempting to break the windows to "Get this shit!" Shortly thereafter, the video includes footage of a female getting shot as she tries to enter through the window opening. After January 6th, Sullivan publicly claimed he was simply a journalist who went inside to film and protect police. Sullivan claimed he made the inflammatory statements so he could blend in with the other rioters. Sullivan did admit, to investigators, that he did not have any press credentials.

### III. DEFENDANT'S PRIOR ACT

Over the course of 2020-2021, Sullivan participated in numerous riots and protests across the country and in his home state of Utah. Sullivan's participation and attendance at legal protests

is not at issue, but his actions during and after these protests, some of which escalated to riots, are the center of this motion. Sullivan's participation has never been that of a journalist, as he claims on January 6th. During these prior protests and riots, Sullivan is captured, often in his own recordings, wearing all black fatigues and giving inflammatory speeches calling for violence. Sullivan even started a group called 'Insurgence USA' that organized, promoted, and recruited attendees for differing protests, counter protests, and events. In addition to his physical participation, Sullivan utilized several social media platforms to provide commentary on protests and riots. He also used these platforms to post, as well as re-post, 'how-to' guides on how to participate in, survive, and inflame protests or riots.

    a. Prior Protests and Riots

Sullivan organized multiple protests in Utah over the course of 2020. On June 29, 2020, Defendant Sullivan organized a counter protest to a pro-police event where a group drove cars around the Provo police station. Sullivan did not seek a permit to hold his counter-protest. Specifically, Sullivan's group blocked both the pro-police cars and street traffic, at his instruction. Sullivan also damaged several cars including kicking a woman's SUV while threatening to beat her. During the blockade, a counter-protester, standing next to Sullivan, shot a driver who was not involved with either group. Sullivan was arrested on July 9, 20202, and charged with criminal mischief, threat of violence, and rioting. His case was dismissed from Utah District Court, due to lack of jurisdiction, and could not be filed in state court due to statute of limitations. On July 22, 2020, Sullivan held a solo protest at the Utah state Capitol while holding his legally owned AR-15. On December 27, 2020, Sullivan tweeted a photo of himself, from his one-man armed protest,

4

with the caption "An armed revolution is the only way to bring about change effectively." He also used the hashtags #Fuck12 and #Acab.

In September of 2020, Defendant Sullivan traveled to Portland, Oregon to attend protests in relation to defunding the police. Sullivan posted a photograph of himself of Facebook, wearing all black and a balaclava with the caption "Let's start a riot." He also posted an Instagram photo of himself in the clothing with the Caption "Battle Ready" and a guide on "How To Take Down A Monument." Prior to the protests, Sullivan recorded himself walking around the streets of Portland wearing all black and a bullet proof vest. Later he engaged in protests and recorded himself giving a speech in support of taking drastic steps to promote a cause.

Sullivan also attended protests and marches in August and September 2020, respectively, Washington, D.C and Southern California. In D.C., he was recorded giving a speech and saying, "burn it down." He posted an Instagram linking his followers to information on a "purge" with a note "SPREAD THE MESSAGE. LET THE ELECTORAL PURGE COMMENCE." Sullivan also used hashtags including #DCProtest.

    **b.** Social Media

In additional to Sullivan's presence at protests, he has been just as vocal about protesting and revolution on social media. As evident by the post described above, Sullivan had several platform accounts attached to either his name or his organization.

    i. Facebook

In addition to the posts mentioned above, Sullivan's Insurgence USA hosted a fundraiser on Facebook for bullet proof vests. Sullivan also offered to sell tactical gear as well in YouTube videos.

5

ii. YouTube

On December 5, 2020, Sullivan posted on his YouTube account Jayden X (which shares the same name as the watermark on his recordings of January 6th), dressed in all black while donning a bullet proof vest and balaclava with the caption "Here is a full guide on how to keep yourself safe during protests and Direct Actions." At differing points in the video Sullivan brandishes a legally owned semi-automatic handgun, rifle, and knife. The same day he also posted a YouTube video captioned "Outstanding job protesters in Paris keep making them notice and burn it all!" On December 29, 2020, Sullivan posted a how-to guide on making Molotov cocktails.

iii. Twitter

Sullivan's Twitter accounts revealed similar intent. On December 26, 2020, Sullivan tweeted "Riots are meant to bring change, so purge the world with fire." On December 27, 2020, Sullivan tweeted a photo of himself, holding a legally owned firearm, at his one-man protest with the caption "An armed revolution is the only way to bring about change effectively." He also used the hashtags #Fuck12 and #Acab. On December 30, 2021, Sullivan retweeted a Tiktok of Senate Minority Leader Mitch McConnell and added the caption "Definitely don't surround his house…" with the hashtag #fuckMcConnell. On December 31, 2020, Sullivan tweeted a photo of himself in a bullet proof fest and armed with the caption "I'm already ready to go Nazi Hunting in 2021, are you?" On January 1, 2021, Sullivan retweeted a tweet from then President Trump and urged counter protesters to show up to Trump's January 6th rally. The very next day Sullivan tweeted "Fuck The System-Time To Burn It All Down" with several hashtags including #burn and

6

#abolishcapitalism. The tweet was accompanied by a Tiktok showing masked figures and ominous music.

## IV. LEGAL STANDARD

**Rule 404(b) Crimes, Wrongs, or Other Acts**

Federal Rule of Evidence 404(b)(2)(A) requires that the government must provide "reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so before trial." Rule 404(b) provides that evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's character, but is admissible for any non-propensity purpose, including motive, intent, common scheme or plan, knowledge, and absence of mistake, or accident. *See United States v. Bowie*, 232 F.3d 923, 926, 930 (D.C. Cir. 2000) (citing Fed. R. Evid. 404(b)). As the United States Court of Appeals for the D.C. Circuit has instructed, Rule 404(b) is a rule of "inclusion rather than exclusion." *Bowie*, 232 F.3d at 929. Additionally, evidence of a defendant's prior crimes may also be admissible where such evidence (1) is direct and substantial proof of the charged crime, (2) is closely intertwined with the evidence of the charged crime, or (3) is necessary to place the charged crime in an understandable context. *Jackson v. United States*, 856 A.2d 1111, 1115 (D.C. 2004). Specifically, "[a]lthough the first sentence of Rule 404(b) is 'framed restrictively,' the rule itself 'is quite permissive,' prohibiting the admission of 'other crimes' evidence 'in but one circumstance' — for the purpose of proving that a person's actions conformed to his character." *Id.* at 929-30 (quoting *United States v. Crowder,* 141 F.3d 1202, 1206 (D.C. Cir. 1998) (*en banc*) ("*Crowder II*")); *accord United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) ("[A]ny purpose for which bad-acts evidence is introduced is a proper

purpose so long as the evidence is not offered *solely* to prove character") (quoting *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (emphasis in original)).

There is a two-pronged test for determining whether evidence of prior crimes is admissible under Rule 404(b). First, the evidence must be "probative of a material issue other than character." *Miller*, 895 F.2d at 1435. Second, the evidence is subject to the balancing test of Federal Rule of Evidence 403, which renders it inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value. *Id.* Furthermore, it is not enough that the evidence is simply prejudicial; the prejudice must be "unfair." *Cassell*, 292 F.3d at 796 (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) for the proposition that "[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be "unfair."); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("[T]he Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweigh[s] the evidence's probative value.") (citations and punctuation omitted) (emphasis in original).

Admission of Rule 404(b) evidence is permitted in the government's case-in-chief. Specifically, the government is entitled to anticipate the defendant's denial of intent and knowledge and to introduce similar act evidence as part of its case-in-chief. *See United States v. Inserra*, 34 F.3d 83, 90 (2d Cir. 1994) ("[Rule 404(b) other crimes evidence] is admissible during the government's case-in-chief if it is apparent that the defendant will dispute that issue"); *United States v. Lewis*, 759 F.2d 1316, 1349 n.14 (8th Cir. 1985) ("It was not necessary for the government to await defendant's denial of intent or knowledge before introducing [Rule 404(b) other crimes] evidence; instead the government may anticipate the defense and introduce it in its case-in-chief");

8

*United States v. Bussey*, 432 F.2d 1330, 1333 n.13 (D.C. Cir. 1970) (noting that Rule 404(b) other crimes evidence to prove identity and to prove that prior and subsequent offenses are so identical as to mark them as handiwork of the defendant should be introduced in the government's case-in-chief). For a prior act to be probative of intent, the act must "usually must involve an offense similar in kind and reasonably close in time to the charge at trial." *Thomas v. United States*, 59 A.3d 1252, 1261 (D.C. 2013); *Boyer v. United States*, 132 F.2d 12, 13 (D.C. Cir. 1942) ("[T]he fact that intent is in issue is not enough to let in evidence of similar acts, unless they are so connected with the offense charged in point of time and circumstances as to throw light upon the intent.").

## V.    ARGUMENT

In this case, the evidence of the defendant's prior acts provides the basis for his motive, the absence of mistake, direct and substantial proof of the charged crime, and is so closely intertwined with the crime charged that a common scheme or plan is apparent. Defendant Sullivan's conduct at the U.S. Capitol on January 6, 2021, was done knowingly, willfully, and with purpose. Based on some of his statements claiming to be a journalist, Defendant Sullivan will presumably deny he intentionally breached the Capitol to engage in wrongdoing. Defendant Sullivan prior statements and acts are probative that his actions, on January 6th, were not the result of self-proclaimed journalist's inadvertence, mistake, or accident. Sullivan had knowledge the Capitol was not open to those without credentials, so it was no mistake he went inside. Therefore, his "defense" that he was simply in/at the Capitol to document and protect police is questionable and directly contradicted by his prior actions and words.

The evidence of the prior acts and statements are close enough in time, provides direct evidence of each other, and shows his continued common plan and scheme. Sullivan did not go inside to document the events, his intentions and motives are made clear from his prior acts and statements: fuck the system, burn it all down. The government intends to introduce video and present social media posts, through investigating witnessing, from the prior acts as well as present the posts from the days leading up to January 6, 2021  This will be done to prove his intent to enter, disrupt, and obstruct which was done in order advance his true motive: upheaving the system.

Last, the highly probative value of the government's proffered 404(b) evidence is not substantially outweighed by potential prejudice to Defendant Sullivan. Any potential prejudice is not unique to this case—where the government has shown a permissible non-propensity purpose— but is simply that endemic to all Rule 404(b) evidence. Such evidence "almost unavoidably raises the danger that the jury will improperly 'conclude that because [the defendant] committed some other crime, he must have committed the one charged in the indictment.'" *United States v. Douglas*, 482 F.3d 591, 601 (D.C. Cir. 2007) (quoting *Crowder II*, 141 F.3d at 1210). Prejudice in this attenuated sense cannot justify a *per se* rule of exclusion. See *Crowder II*, 141 F.3d at 1210.

The defense must instead show "compelling or unique" evidence of prejudice, *Mitchell*, 49 F.3d at 777, distinct from the probative value of the evidence and distinct from the intrinsic prejudicial potential of any Rule 404(b) evidence. The D.C. Circuit has consistently minimized the residual risk of prejudice not by exclusion but by instead issuing limiting instructions to the jury. *See, e.g., Douglas,* 482 F.3d at 601 (emphasizing the significance of the district court's instructions to jury on the permissible and impermissible uses of the evidence); *Pettiford*, 517 F.3d at 590 (same); *Crowder II*, 141 F.3d at 1210 (stating that mitigating jury instructions enter the Rule

10

403 balancing analysis).  Thus, because the government's Rule 404(b) evidence is not unduly prejudicial and any minimal prejudice can be addressed through an appropriate limiting instruction, its admission is appropriate.

## VI. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court permit at trial the introduction of its proffered "other acts" evidence, pursuant to Fed. Rule Evid. 404(b).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ REBEKAH LEDERER*
REBEKAH LEDERER
Pennsylvania Bar No. 320922
Assistant United States Attorney
U.S Attorney's Office for District of Columbia 601 D St. N.W, Washington, DC 20530
Tel. No. (202) 252-7012
rebekah.lederer@usdoj.gov