UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

JOHN EARLE SULLIVAN,

    *Defendant*.

Case No. 1:21-cr-78-RCL

**ORDER**

Defendant John Earle Sullivan was arrested in January 2021 for his participation in the Capitol Riots of January 6, 2021. In April 2021, the United States seized $62,813.76 from the defendant's bank account, pursuant to two seizure warrants issued by a magistrate judge. *See* Gov's Opp'n to Mot. for Release of Funds at 10, ECF No. 29. The affidavit filed in support of the search warrant attested that Mr. Sullivan had accrued those funds by selling footage he had taken during the Capitol Riots. *Id.* On November 16, 2023, a jury convicted Mr. Sullivan of all seven counts contained in his indictment. Verdict Form, ECF No. 126. On April 26, 2024, this Court sentenced Mr. Sullivan, and his sentence included the forfeiture of $89,875.00 of funds contained in his bank account, as well as $1,000.00 held in his Venmo account. On January 20, 2025, Mr. Sullivan received a presidential pardon, and this Court accordingly dismissed his case as moot on March 4, 2025. *See* Order of March 4, 2025, ECF No. 164.

On March 15, 2025, Mr. Sullivan filed a Motion for an order directing the United States to return "all monies taken from defendant as part of his arrest in this matter . . . ." Mot. for Return of Assets at 1, ECF No. 165. The Government submitted its response on April 11, 2025, taking the position that Mr. Sullivan's presidential pardon had the effect of vacating his criminal forfeiture

1

penalty.  Gov's Resp. to Mot. for Return of Assets at 2, ECF No. 168.  The Government further expressed that it would "commence steps to return any funds seized from [Mr. Sullivan] . . . ."  *Id.*

A pardon's effect on forfeited or confiscated property has been well-established since the mid-19th century.  In *Knote v. United States*, the Supreme Court explained that a pardon does not

> "affect any rights which have vested in others directly by the execution of the judgment for the offence, or which have been acquired by others whilst that judgment was in force. . . . [I]f the proceeds have been paid into the treasury, the right to them has so far become vested in the United States that they can only be secured to the former owner of the property through an act of Congress.  Moneys once in the treasury can only be withdrawn by an appropriation by law.  However large, therefore, may be the power of pardon possessed by the President, and however extended may be its application, there is this limit to it, as there is to all his powers,— *it cannot touch moneys in the treasury of the United States, except expressly authorized by act of Congress*. . . .  Where, however, property condemned, or its proceeds, have not thus vested, but remain under control of the Executive, or of officers subject to his orders, or are in the custody of the judicial tribunals, the property will be restored or its proceeds delivered to the original owner, upon his full pardon.  The property and the proceeds are not considered as so absolutely vesting in third parties or in the United States as to be unaffected by the pardon until they have passed out of the jurisdiction of the officer or tribunal."

95 U.S. (5 Otto) 149, 154 (1877) (emphasis added).  Though *Knote* was decided nearly 150 years ago, the Supreme Court has reaffirmed *Knote*'s holding as recently as 1990.  *See Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 425–26 (1990) (quoting *Knote* and noting that "the pardon power cannot override the command of the Appropriations Clause").[1]

---

[1] Moreover, in the years since *Richmond* was decided, multiple Circuit Courts of Appeals, including the D.C. Circuit, have continued to cite *Knote* for the proposition that moneys or proceeds that have passed into the custody of the Treasury cannot be withdrawn except via an appropriation, effectuated by the ordinary legislative processes of bicameralism and presentment.  *See, e.g.*, *In re North*, 62 F.3d 1434, 1435–36 (D.C. Cir. 1994) (Sentelle, J.); *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 391 (9th Cir. 2000); *PA Prison Soc'y v. Cortes*, 622 F.3d 215, 243 (3d Cir. 2010); *CFPB v. Law Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 182 (2d Cir. 2023); *Fordham v. Ga. Dep't of Admin. Servs.*, No. 23-11214, 2023 WL 5747709, at *2 (11th Cir. Sept. 6, 2023); *Boultbee v. United States*, No. 2024-2260, 2025 WL 1077679, at *2 (Fed. Cir. Apr. 10, 2025); *Yasak v. Ret. Bd. of Policemen's Annuity and Benefit Fund of Chi.*, 357 F.3d 677, 683–84 (7th Cir. 2004) (Ripple, J., dissenting).

It seems obvious that this Court's power to grant Mr. Sullivan the relief he seeks, and the government's lawful authority to remit Mr. Sullivan's funds—as it has expressed its intention to do—depend on whether Mr. Sullivan's funds have passed at any time into the custody of the United States Treasury. Neither party's brief engages with any of the case law identified above, nor have the parties provided the Court with any information concerning the whereabouts of Mr. Sullivan's seized funds.[2] Therefore, it is hereby

**ORDERED** that, within 3 days of the issuance of this Order, the government shall file a supplemental notice informing the Court as to the location of Mr. Sullivan's funds. That notice must state specifically whether Mr. Sullivan's funds have ever passed into the custody of the United States Treasury. It is further

**ORDERED** that the government shall not remit the funds that are the subject of Mr. Sullivan's Motion for Return of Assets, ECF No. 165, until the Court has ruled on that Motion.

Date: April 12, 2025

_____
Royce C. Lamberth
United States District Judge

---

[2] The government's brief notes that "[t]he seizure warrant contemplates holding funds pending disposition of the predicate criminal offense . . . ." Gov's Resp. to Mot. for Return of Assets at 2. This sentence may signify that Mr. Sullivan's funds remain in the possession of the court or executive-branch officers who effected the seizure. However, it might also be read as only specifying *how long* Mr. Sullivan's funds were expected to be held (i.e., until the "disposition of the predicate criminal offense"), rather than *where* those funds are held. Given this ambiguity, the Court deems that further clarification is necessary.