UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-78 (RCL) |
| v. : | |
| : | |
| JOHN EARLE SULLIVAN, : | |
| : | |
| Defendant. : | |

### UNITED STATES' SUPPLEMENTAL NOTICE
### IN RESPONSE TO COURT ORDER

The United States files this supplemental notice pursuant to the Court's Order dated April 12, 2025 (ECF No. 169). The Court ordered that "within 3 days of the issuance of this Order, the government shall file a supplemental notice informing the Court as to the location of Mr. Sullivan's funds. That notice must state specifically whether Mr. Sullivan's funds have ever passed into the custody of the United States Treasury," and prohibited the government from remitting the funds pending the Court's disposition of the defendant's motion.[1] In response to the order, the Government states as follows:

Between approximately May 2021 and December 2023, the seized funds were held in the custody of the Federal Bureau of Investigation ("FBI") in Salt Lake City, Utah.

After defendant's conviction, the FBI released the funds via cashier's check dated December 7, 2023 in the amount of $62,813.76 to the U.S. Marshal's Service ("USMS"). The check was processed by the USMS Asset Forfeiture Unit through the Treasury Over the Counter System ("OTCnet"), and the transaction settled December 27, 2023.

---

[1] The sentence "[t]he seizure warrant contemplates holding funds pending disposition of the predicate criminal offense" was meant to illustrate the interaction between the seizure warrant and forfeiture under Fed. R. Crim. P. 32.2, not factual statements as to the location of the funds or the duration they have been held. Undersigned regrets any confusion from this wording.

Since their deposit on December 27, 2023, the funds have been and continue to be held in the Seized Asset Deposit Fund ("SADF"). Based on consultations with the representatives from USMS, the SADF is a deposit fund in the U.S. Treasury. The USMS Asset Forfeiture Unit tracks the funds in the SADF pending final decision on forfeiture; generally speaking, money is either transferred to the Asset Forfeiture Fund ("AFF") if forfeiture is approved or returned to the owner if forfeiture is denied. In this case, the funds ($62,813.76) remain in the SADF pending further direction from the United States Attorney's Office for the District of Columbia.

The United States notes that defendant Sullivan's convictions were not yet final and vacated on direct appeal. Accordingly, the rationale of *Nelson v. Colorado*, 581 U.S. 128 (2017), not *Knote v. United States*, 95 U.S. (5 Otto) 149 (1877), should apply. In *Nelson*, the Court held that a state statute that allowed refunds of costs, fees, and restitution imposed as a result of an overturned conviction only by clear and convincing proof of innocence violated due process. *Nelson*, 581 U.S. at 128. The Court noted that "reversal of a conviction is reversal, regardless of the reason, and an invalid conviction is no conviction at all," *id.* at 137 n.10 (cleaned up) and concluded, "[t]o comport with due process, a State may not impose anything more than minimal procedures on the refund of exactions dependent upon a conviction subsequently invalidated." *Id.* at 139. As a result, some appellate courts have applied the rule of *Nelson*, not *Knote*, to return non-vested forfeited property where a conviction was vacated on appeal. *Compare United States v. Reynolds*, 98 F.4th 62, 72 (1st Cir. 2024) (holding that *Nelson* required vacating forfeiture order due to abatement but noting "different considerations that might arise where forfeited property had been distributed to victims before a defendant's death would call for a different result")*, United States v. Ajrawat,* 738 F. App'x 136, 139 (4th Cir. 2018) (per curiam) ("When the underlying conviction is invalidated—regardless of the reason—there is no longer any basis justifying the government's retaining funds exacted only as a result of that conviction.") *with*

*Boultbee v. United States*, No. 23-1884, 2024 WL 3220261, at *4 (Fed. Cl. June 27, 2024), (applying the *Knote* framework in a case not overturned on appellate review but receiving a later pardon because "*Nelson* deals with cases where the convictions are overturned on appellate review; it says nothing about when a conviction is pardoned."), *aff'd*, No. 2024-2260, 2025 WL 1077679 (Fed. Cir. Apr. 10, 2025).

If the Court nonetheless believes that the *Knote* framework applies, it should conclude that the funds remain in the custody of the USMS. Practically speaking, on information and belief, the USMS continue to exercise control over the funds. *See also, e.g., United States v. Berger*, No. CR180112401PHXJJT, 2022 WL 17832793, at *1 (D. Ariz. Dec. 21, 2022) ("Rehus returned the entire amount to the United States, where it remained *in the custody of the United States Marshal Service's* Seized Asset Deposit Fund Account pending further Order of this Court.") (emphasis added), *aff'd sub nom. United States v. Rehus*, No. 23-15011, 2024 WL 1502499 (9th Cir. Apr. 8, 2024). That is also consistent with the applicable Department of Justice forfeiture regulations. *See* 28 C.F.R. § 8.5(a), (b) (titled "Custody" and providing in relevant part that "[a]ll property seized for forfeiture by ATF, DEA, or FBI shall be delivered to the custody of the U.S. Marshals Service (USMS), or a custodian approved by the USMS, as soon as practicable after seizure . . . ." and that "[s]eized U.S. currency . . . must be deposited promptly in the Seized Asset Deposit Fund pending forfeiture. . . . .").

The government acknowledges that *In re North*—a pre-*Nelson* case—applied the *Knote* framework to a pardon received prior to final conviction. *In re North*, 62 F.3d 1434, 1435 (D.C. Cir. 1994) (per curiam) ("On December 24, 1992, after the jury verdict but before judgment of conviction was entered, George received a 'full, complete, and unconditional pardon' from President George Bush."). But that case is clearly distinguishable on its facts—it involved a separate petition for attorney's fees under an independent counsel statute for which the defendant

3

was clearly ineligible—notwithstanding his pardon—versus the return of seized funds held in the SADF following the vacatur of the underlying forfeiture on direct appeal.[2]

Should the Court find fuller briefing on the issues presented in this notice appropriate, the Government would respectfully request a briefing schedule.

                                                        Respectfully submitted,

Edward Robert Martin, Jr.
United States Attorney
D.C. Bar No. 481866

*/s/ Michael L. Barclay*
MICHAEL L. BARCLAY
Assistant United States Attorney
N.Y. Bar Reg. No. 5441423
U.S. Attorney's Office for the District of Columbia
601 D Street, NW Washington, D.C. 20001
(202) 252-7669
Michael.Barclay@usdoj.gov

---

[2] Similarly, Chief Justice Rehnquist, writing for the Court in part, applied the *Knote* framework to the proceeds of forfeited property sold pending appeal and placed in the Asset Forfeiture Fund (AFF). *See Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 96 (1992) (equating "public money" and "proceeds now resting in the Assets Forfeiture Fund of the Treasury," but finding an appropriation in 28 U.S.C. § 2465) (Rehnquist, C.J.). But, even if *Knote* applied, that case does not compel the conclusion that these funds are within the custody of the Treasury because the AFF and SADF serve different purposes—money from the AFF is regularly obligated and appropriated, whereas SADF funds are held ensure control over seized monies. *See* https://www.justice.gov/jmd/afms ("Funds in the SADF are not the property of the Federal government and may not be used to fund AFP operations"). *See also United States v. Plunk*, 511 F.3d 918, 923 (9th Cir. 2007) ("Because the property had already been sold when Plunk prevailed on appeal of the forfeiture proceedings, the district court properly determined that Plunk was entitled to receive the value of the property that had been sold") (citing *Republic Nat'l Bank of Miami*, 506 U.S. at 95–96).